Bland, Chancellor.
This petition having been submitted, the proceedings were read and considered.
The bill alleges, that one of the heirs, Benjamin B. Mackall, is a lunatic, and prays a subpoena against all the heirs, in the usual form, to appear, ‘the said Benjamin B. Mackall by guardian to be appointed in bis behalf to answer,’ See. It is not alleged, and it is admitted, that Benjamin B. Mackall has not been regularly found and declared to be a lunatic.
A subpoena was issued against him to which the sheriff has returned, ‘summoned, see certificate;’ which certificate annexed to the writ is in these words. ‘This is to certify, that Mr. Benjamin Mackall, has been resident in the Maryland Hospital for the last ten months, and is still there; and, during that period, has been of unsound mind and incapable of the management of himself and his affairs. — John P. Mackenzie, attending physician. — 22d June, 3 829.’
At law it is clear, that the lunacy of the defendant affords him no exemption from arrest in civil cases; nor can he be discharged without bail, in any case where, if sane, he might be held to special bail, (a) And it appears to be understood, that a lunatic de *488 fendant in Chancery must be served with process, or summoned in like manner as if he were sane. (b) But the committee, or legally appointed trustee of such lunatic, if he has one, who is not interested in the case, is always appointed, as of course, his guardian ad litem. If the committee be adversely interested, or the lunatic has no committee, then the court will, on application, appoint a guardian to answer for him. (c) The awarding of a commission of lunacy is not an absolute matter of right, but rests in the sound discretion of the Chancellor. It may be withheld where no good is likely to result from it. In this instance, the expense of the commission could only be paid out of the fund, already, perhaps, exceedingly deficient, which should be appropriated altogether to the benefit of the creditors of the deceased ; in which, and in many similar cases, because of the poverty of the lunatic, as well as with a view to his proper personal treatment, the court will act upon the fact of his being actually in a condition of mental incapacity as fully as if he had been found to be non compos mentis by a regular inquisition. (d)
Hence where the court is satisfied, as in this instance, by a certificate of the attending physician of the hospital in which the lunatic has been placed, or by such other proof as the nature of the case will admit, that the intellectual infirmity of the defendant is such, arising from madness, age, or any other cause, as to render him unable to manage his own affairs, on application a guardian ad litem may be appointed for him, and charged to defend the suit on his behalf, (e) So on the other hand, that the rights of such an *489 imbecile person, who has instituted a suit, may be taken care of, and that he maybe enabled to perform a duty, his solicitor may be directed to sustain and prosecute the suit for his benefit; or a guardian may be appointed for the special purpose of executing the act required, according to the nature of the case. (f)
Whereupon it is Ordered, that Louis Mackall he and he is hereby appointed guardian of the defendant Benjamin B. Mackall, to make answer to the said hill of complaint in his behalf, and in all respects to defend and protect his interests in this suit.
On the 27th of April, 1830, the lunatic defendant answered by his guardian. The other defendants put in their answers, in which they all admitted the claims of the plaintiffs; that the personal estate of the deceased was insufficient to pay his debts; and consented, that a decree should pass as prayed.
4th May, 1830.
Bland, Chancellor.
Decreed, that the real estate of Benjamin Mackall, deceased, be sold; that John Johnson and Thomas S. Jllexander be appointed trustees to make the sale, &c.; the terms of which shall be, one-third of the purchase money to be paid in six months, one other third in twelve months, and the residue in eighteen months from the day of sale; with interest from the day of sale, &c. That notice be given to the creditors of the deceased to file the vouchers of their claims within four months from the day of sale. And that the defendant Imuís Mackall, the administrator de bonis non of the deceased, account, &c.; which account the auditor is directed to state from the evidence now in the case, and such other evidence as may be produced before him by either party, on giving the usual notice, &c.
After which the trustees reported that they had given notice to the creditors; and had made sales of the real estate of the deceased on the 26th of July, 1830, to the amount of $10,275 92 ; which •were finally ratified on the 20th of November, 1830.
On the 10th of February, 1831, the plaintiffs filed their bill in the nature of a supplemental bill against Christiana Mackall, the widow of Benjamin Mackall, deceased, in which they state, that in pursuance of the decree of the 4th of May, 1830, and the notice to creditors, The President, Directors and Company of the *490 Bank of the United States, amongst other creditors, filed their claims in this court, one of which is secured by a mortgage of the real estate of the deceased, which had been sold by the trustees, which mortgage was executed by the deceased; and to which there is a release of all the right of dower of Christiana Mackall, the now widow of the deceased; that- they, the plaintiffs, with all the other creditors of the deceased, are entitled to the benefit of the mortgage, so as to have the same, and especially the dower right, applied to the discharge of the mortgage debt in exoneration of the other estates of the deceased; and to have and use the name of the Bank for that purpose; that before the passing of the decree of the 4th of May, 1830, in this case, by a proceeding in Prince Georges County Court, a part of that real estate of the deceased, mentioned in the proceedings, had been assigned to this defendant, Christiana, as her dower, upon which she had entered, and was then in possession, receiving the rents and profits to her own use; and that as the decree of the 4th of May had only been obtained against the heirs at law of the deceased, it would not bind the right of this defendant. Whereupon they prayed, that the land which had been assigned to the widow for her dower might be sold, &e.
The auditor, on the 2d of March, 1831, reported, that he had made a statement of the claims of creditors numbered from one to thirty-three, together with two statements marked A. and B. of the account of Louis Mackall, the administrator de bonis non of the deceased. The auditor, in this report among other things, says, the claim of The Bank of the United Slates, marked No. [4, is secured by a deed of trust to Richard Smith, dated 10th October, 1821, of the real estate of the deceased, and the negroes therein mentioned; this claim is proved in the usual manner, and will be allowed as a lien of that date. The claim of the same Bank, No. 5, is stated in the affidavit to be secured by a conveyance of certain negroes to Richard Smith, dated the 12th of January, 1831, of which there is no proof. The only evidences of the claims of the same Bank, marked No. 6 and 7, are short copies of judgments agáinst the administrator of the deceased, which are not proved in the usual manner. The claim of the same Bank, No. 8, is an account which makes the deceased debtor to it as assignee of the Bank of Columbia for the amount of sundry notes due at his death. For which notes, it is alleged, on the death of Benjamin Mackall, Benjajnin B. Mackall, his son, gave his note, dated 25th Septem *491 ber, 1823, for $4,025, endorsed by Christiana Mackall, Louis Mackall, Rebecca Mackall, and Christiana Mackall, these being the widow and all the heirs of Benjamin Mackall competent to sign, which was reduced to principal $4,000, and interest thereon paid to 5th of August, 1826; on which day the note became due, and has been lying under protest ever since. It is also stated, that this debt is secured by a deed of trust on three and seven-eighths acres in Georgetown, executed subsequent to that given to secure claim No. 4. This claim, No. 8, is not proved in the usual manner.
The auditor further says, that the claims No. 9, 10, 12, 13, 14, 15, 18, 19, 20, 21, 23, 24, 25, 26 and 28, are evidenced by short copies of judgments recovered against the deceased administrator, and should be allowed as against the personal estate; but they are not proved as against the real estate. Claim No. 29, is also admitted by the administrator, hut is not proved as against the real estate. The proof of elaim No. 11, is a short copy of a judgment; George Biscoe and George W. Biscoe v. John P. Greenfield, which is entered for the use of Robert W. Bowie, with the affidavit of said Bowie in the usual form. It is stated that this judgment was superseded by Edmund Key and the deceased ; that a scire facias was issued and judgment recovered against the principal and his sureties. The auditor thinks a short copy of the last judgment should be produced witb the affidavits of the original creditors and the assignee; and proof of the insolvency of the original debts. The insolvency of Key is established by the pleadings in this case.
The auditor further says, that the claim No. 27, is on the bond of Edmund Key and the deceased. The insolvency of Edmund Key is supposed to be established by the pleadings. The claim No. 30 is not proved. And upon the circumstances stated by the claimant himself, the auditor thinks it cannot be proved as a claim against the estate of the deceased. Edmund Key, the claimant, states, that he held a judgment against a certain William Thornton, which he assigned to Benjamin B. Mackall, administrator of the deceased, to pay certain endorsements of Benjamin Mackall for him. He afterwards agreed, that Kuis Mackall, the administrator de bonis non, might apply the sum of $400, part of the proceeds of the judgment, to the payment of a claim of The Bank of the United States against the deceased; and he therefore claims to be substituted in the place of the Bank, and to be considered as a preferred creditor to the amount of that payment. The plaintiff’s claims *492 No. 1, 2, and 3, which are stated to the amount of $4,695 12 are on the joint and several obligations of the deceased and Edmund Key, who is responsible for the moiety thereof. And claim No. 6, is against the deceased as an endorser for Edmund Key, and is stated to amount of $1,469 51. And claim No. 21, is against the deceased as surety on a bond which is stated to amount of $6,099 61. The auditor thinks, that the amount of the claim No. 30, if established, should be retained to answer any sum which may be recovered against the deceased’s estate on account of claims No. 6, and No. 27, or the moiety of claims No. 1, 2, and 3, for which the defendant Edmund Key is liable. The defendant Edmund Key, by letter to the auditor, has also advanced a claim, on behalf of his wife Margaret J. Key, for the value of certain negroes, her separate property, which were sold by Beijamm B. Mackall, the former administrator, and applied to the use of the estate of the deceased. No proof has been offered to sustain the claim; nor any data from which the auditor could state the probable amount. The auditor proposes when the proper materials are furnished to state the claim as No. 31. And lastly, that claim No. 33, is not proved in the usual manner.
The auditor further says, that no proof had been furnished to him of the assets in the hands of Benjamin B. Mackall, surviving administrator, from which he could state an account. The defendant Louis Mackall, the administrator de bonis non, has filed certain papers from which the auditor has stated an account A.; such as he supposes would be desired by him. But to the items of that account No. 1, 2, 3,4, 5, 6, 7 and 8, the auditor objects; because, they are for moneys paid by the administrator in full of judgments recovered by creditors of the deceased against the administrator, as he understands; whereas the personal estate appears to be deficient, and therefore dividends only of said claims should be allowed. No. 10, and 11, are for payments made to The Bank of the United States on account of its claims. As the payments are less in amount than the dividends which may be allotted to the Bank on its claims, they ought to be allowed. But it does not distinctly appear, that credits have been allowed to it for those payments. There is no evidence of the payment of the sum of $16, and $75, for officer’s fees in 1824, and 1829; and the auditor is unable to determine, from the papers before him, whether the allowance of $124 97 to be retained for officer’s fees, yet due, is correct. There is no proof, that the negroes for whom an allowance is claimed, to *493 amount of §1,005, were mortgaged to The Bank of the United States, as is alleged. They have not been taken out of the possession of the administrator; and the auditor thinks they should be accounted for by him, as a part of the personal estate of the intestate, leaving the Bank to prove its claim as it may think proper. The commission allowed is supposed to be correct, as the act of 1798 limits the allowance to ten per cent, on the amount of the inventory. This account A. is also supposed to be erroneous, as no interest is allowed on the amount of the estate in the hands of the administrator. The auditor has therefore, slated an account B. from which the aforesaid objectionable items are excluded. The commission is allowed on the amount of the inventory, and interest charged from fifteen months after the date of the letters of administration.
To this report, the plaintiffs, whose claims are No. 1, 2, and 3, on the same day filed the followdng exceptions. They except to claim No. 4; because the same is secured by a deed of trust from the debtor to Richard Smith of certain real estate in the District of Columbia, where the claimant is situated or resident; and which is not liable for the claims of the complainants and other general creditors; and the complainants insist, that the said creditors should enforce it in the name of said creditor, or that the said security should be assigned for their benefit before any part of the fund, created in this cause, should be applied to payment of said claim. They except to claim No. 5; because it is barred by limitations ; and because an absolute judgment was recovered, on the same cause of action, against Benjamin B. Mackall and Richard H. Mackall; and the said judgment is evidence, that the personal estate in the hands of the said administrators wTas sufficient to pay said claim; and therefore, bars the said claim as against the real estate, and the personal estate in the hands of the administrator de bonis non. They except to claims No. 6 and 7; because they are not proved in the usual manner; and also for the same reasons stated in their exceptions to claim No. 5. They except to claim No. 8; because it is not proved in the usual manner; because it is barred by limitations; because it was satisfied by the notes of Benjamin B. Mackall, &c. which is stated and mentioned in said claim; and because it is admitted, that the said claim is secured by a deed of trust of real estate in the District of Columbia, where the claimant resides or is situated; and the said real estate should be first applied to the payment of said claim in exoneration of the fund raised in this cause. They except to claim No. 27; because the *494 said Benjamin Mackall, deceased, was surety on a bond for Edmund Key, which bond was given for the purchase money of a tract of land in Prince Georges county; and that the said land is ample security for said debt, and should be applied to its payment in relief of the estate of the deceased party.
The Bank of the United States, on the 27th of March, 1831, as claimants No. 4, 5, 6, 7, and 8, also filed exceptions to this report of the auditor. To the plaintiffs’ claims No. 1, 2, and 3, for that there is not legal evidence to support said claims; and that the same are barred by the statute of limitations. To claim No. 9; for that the voucher in support of said claim, is not legal evidence thereof in this suit; and also, for that the same is barred by the statute of limitations. To claims No. 10, 11, 12, 13,14, 16,17, 18, 19, 21, 22,23, 24,26, 27, 29, 30, 32, and 33 ; for that there is no legal proof in support of either of said claims; and that each of them is barred by the statute of limitations. To all the before mentioned claims, they object, that judgments against the administrators of the deceased are no evidence in a suit instituted for the sale of the real estate; and that the original vouchers, or legal evidence of its existence, if there be any, not being exhibited within the time prescribed by law; and that the same are barred by the statute of limitations. These exceptants moreover insist upon the right to urge these objections as well against the claims of the complainants, as of the other claimants; because these exceptants were not made parties to the bill; and had no opportunity of contesting the same before the decree; and because, if said claims were allowed, although the original defendants to the suit may not be injured thereby, and therefore had no motive for insisting on the objections herein before stated; yet the fund for the payment of the bona fide claims of this exceptant would be greatly diminished, and rendered insufficient to pay what is due.
The plaintiffs, by their petition, stated, that among others of the creditors of the deceased, The Bank of the United States had filed sundry claims for moneys due to it at its office of Discount and Deposite at Washington in the District of Columbia; and alleged, that one or more of the said claims are secured by a conveyance of a part, or the whole of said real estate, made by the deceased to a certain Richard Smith, cashier of said Bank, in trust for its use; and they submit, that the said lien shall be respected in all the proceedings in this case. That the Bank, by filing its claim, has become a party to this case; but, as the trustee Richard Smith *495 is no party to this case, there may be some doubt, whether the trustees under the decree of the 4th of May, 1830, can convey good titles to the purchasers from them. Whereupon, the plaintiffs prayed, that the Bank might be required to procure its trustee Smith, to convey the real estate so held in trust by him, to the trustees appointed by the decree in this case, in order, that they might convey good legal titles to the purchasers, &c.
3d March, 1831.
Bland, Chancellor.
It is a well settled principle, in relation to creditors’ bills, that where a creditor comes in after the institution of the suit, by filing the voucher of his claim or otherwise, he and all who have an interest in the claim, either as trustee, or cestui que trust, do thereby, to the full extent of their respective interests, as expressed by such voucher, become parties to the suit, and are bound accordingly by the decree in favour of the purchasers under it; and also as regards all others who were originally or may afterwards be considered as parties to the suit. (g) It is true, that in cases of this kind, where mortgagees, or other like incumbrancers, are not made parties, or do not come in, they are untouched by the decree; but if they once come in and consent to the sale, or claim under the decree they are bound by it. (h) But, in general, for the protection of purchasers, the surplus of the proceeds of the sale will not be paid to the mortgagor, his inheritor, or a defendant, where it is shewn, that there are outstanding incumbrancers who have not come in, or been made parties to the suit; and the sale has not been made subject to such incumbrances. (i) Hence it would be wholly unnecessary and improper to order a conveyance, as prayed by this petition.
Whereupon it is Ordered, that the said petition be and the same is hereby dismissed with costs.
The defendant Christiana Mackall, not having answered the bill filed on the 10th of February, an interlocutory decree was passed against her according to the act of Assembly; (j) and a commission was issued and returned, but without any testimony. Whereupon it was Decreed, on the 24th of March, 1831, that the trustees appointed by the decree of the 4th of May, 1830, make sale of the real estate, clear of all claim of this defendant Christiana Mackall *496 for dower as widow of the late Benjamin Mackall. After which the trustees reported, that they had, on the 15th of October, 1831, sold all those parts of the real estate which had been assigned to her for her dower; which sales were finally ratified on the 20th of January, 1832.
10th November, 1831.
Bland, Chancellor.
On motion it is Ordered, that the report of the auditor, together with all the exceptions thereto; and also all the objections to the claims of the creditors, stand for hearing on the 25th day of January next;' and that the parties and creditors be and they are hereby authorized to take testimony in relation to the said report and claims of creditors therein mentioned, before any justice of the peace, on giving three days notice as usual; Provided, that the said testimony be taken and filed in the Chancery Office, on or before the tenth day of January next. But to avoid unnecessary delay and trouble; and at the same time to ensure an effectual investigation of the merits of each subject of litigation, it is to be understood, that the notice of the taking of testimony required to be given, must be to the creditor against whose claim the testimony proposed to be taken is to be directed; and if the testimony is proposed to be taken by a creditor in support of his claim, then he must give notice to the defendants in the case or their solicitor; or to two or more creditors or their solicitors.
The auditor, on the 24th of January, 1832, made a further report, in which he says, that he had examined four additional claims, lately filed in this case, and stated them as No. 34, 35, 36 and 37; that the claim No. 34, is a single bill of the administrator de bonis non, of the deceased; and is therefore admitted as against the personal estate; that the claim No. 37 is on a bond executed by Edmund Key, Aguila Beall, and the deceased, with a condition, that Key should prosecute an appeal from a judgment recovered against him by the obligees. A short copy of a judgment against the administrator de bonis non, on this bond, is also filed, which proves the claim as against the personal estate. But, in order to prove it as against the real estate, the auditor thinks some evidence must be offered as to the determination of the appeal; and that only one-half of the claim ought to be allowed, unless it is proved, that Aguila Beall is insolvent.
After which the plaintiffs, on the 25th of January, 1832, filed the following additional exceptions, in which they insist upon their *497 exceptions heretofore filed against the claims of The Bank of the United Stales. And also except to so much of the auditor’s report as in any manner conflicts with their aforesaid exceptions. They except to the auditor’s account A. between the administrator de bonis non, and the estate of the deceased, for all and every the reasons which are set forth and assigned as objections to said account in the auditor’s report; except, that objection of the auditor against the allowance for $1,005, for the value of negroes mortgaged, the mortgage having been produced and admitted. They also except to so much of the accounts A. and B. of the administrator de bonis non, as stated by the auditor, as make allowances to him for moneys paid for county taxes; for county taxes remaining due, and for the future support of the negroes.
The creditors of the deceased, reported by the auditor as claimants No. 9, 10, 12, 13, 14, 15, 16, 17, 21,23 and 24, at the same time, prayed leave to insist upon all the exceptions taken by the plaintiffs to the reports of the auditor, and to have the same benefit thereof as if they were again specially repeated. And, on the same day, The Bank of the United Slates excepted to all four of the claims stated by the auditor in this his last report; because they are barred by the statute of limitations; because No. 34 is founded on a single bill by the administrator de bonis non, and can be no evidence of a claim against the deceased; and because there is no evidence to support claim No. 37.
Instead of taking testimony under the order of the 10th of November, the parties, by agreements filed, made what they deemed sufficient admissions of the authenticity of the vouchers of some of the contested claims, so as to bring the case before the court.
14th February, 1832.
Bland, Chancellor.
’This case standing ready for hearing and further directions on the several reports of the auditor, and the exceptions thereto, and the solicitors of the parties having been heard, the proceedings were read and considered.
The court is now called on to have the assets of this deceased debtor so distributed as to produce the greatest amount of satisfaction to his several creditors; all of whose claims have been either expressly admitted, or left unopposed by his legal representatives. But some of these creditors, by relying on the statute of limitations and other exceptions against their rival and co-creditors, have endeavoured to protect their own satisfaction from being lessened, by an application of any part of the assets to the discharge of the *498 claims to which they have thus objected. Some others of these* creditors have obtained absolute judgments against the administrators of the deceased debtor, which, it is insisted, should be treated as a complete exoneration of his real estate;, others of them have specific liens on the property from which the proceeds' now to be distributed have been raised; and one of them holds a lien, as a security for its debt, on land lying beyond the jurisdiction of this court; thus altogether presenting a complexity of conflicting interests and equities of unusual occurrence.
According to the mode of proceeding under a creditor’s bill, each creditor is allowed to come in without any other formality than the mere filing of the voucher of his claim; and to be thenceforward, considered as a party to the suit. (k) If the statute of limitations, as in this instance, be relied on, in general terms, as against any claims, that period of limitation must be understood as having been intended to be insisted on, which is properly applicable to the nature of the claim; as where it is founded on a mortgage of the-realty twenty years, if on a judgment or specialty twelve years, and if on a simple contract three years must be considered as the bar relied on. If the statute of limitations be relied on generally by a creditor against the claim of a co-creditor, it can be allowed to prevail only in so far as it is applicable to the representative holding-the real or personal estate of the deceased who it is proposed to. charge in respect of such assets; as where the claim was merely a simple contract debt due from the deceased, upon which a judgment had been recovered against, or a promise of payment made by the executor or administrator, the claim could not be barred as such against the executor or administrator; because of such judgment or promise; but as that cannot bind the heir or devisee, the claim will not be allowed against him if barred as a mere simple contract, debt. The day of filing the voucher of the claim is, as to it, the date on which the suit for its recovery was instituted; and up to which the statute of limitations, if relied, is allowed to run. (l) All objections to claims, thus coming in under the decree, are received in the shape, most usually, of exceptions made, as in this instance, upon which the court looks only at the true nature and substance of the objection.
But it has been laid down, that if a creditor has obtained an ab *499 solute judgment against the executor or administrator, although it must be deemed conclusive of a sufficiency of personal assets, as between the creditor and the executor or administrator; yet it shall not be so held as between the creditor and the heir or devisee, so as to exonerate the real estate; but that an insufficiency of the personalty may be shewn- by the creditor for the purpose of letting himself in upon the realty, (m) And it has also been laid down, that a plea of the statute of limitations shall only enure to the benefit of him who pleads it under a creditor’s bill; and consequently, in this case, where the statute of limitations can be sustained as a bar to any claim, it can only be allowed so to operate as to exclude them from coming in conflict with, or receiving any thing to the prejudice of the claim of him by whom the statute of limitations was pleaded. (n)
*500 With a recollection of these established principles, it will be necessary to take a general survey of these claims, in order to un *501 derstand the nature of the directions which the court is now called upon to give respecting them.
*502 Where one creditor may, to obtain satisfaction, have recourse to two funds, and another creditor of the same debtor can only resort *503 to one of them; he who has it in his power to resort to the two funds may be compelled to obtain satisfaction, as far as he can, *504 out of that fund upon which the other creditors can have no claim, so as to leave the other fund for their satisfaction. The principle *505 upon which this arrangement is made is not deduced from that which may properly be considered as the contract between debtor *506 and creditor, but is founded on a natural and moral equity, that it shall not depend upon the will or caprice of one creditor who has *507 within his reach a double bind to disappoint another creditor of his satisfaction. And this principle has been applied in all such cases, *508 as well under the peculiar circumstances, in the life-time as after the death of the debtor, (o) A mere bounty of the testator enables the *509 legatee to call for this species of marshalling; that if those creditors, having a right to go to the real estate descended, will go to *510 the personal estate, the choice of the creditors shall not determine ■whether the legatees shall be paid or not. So that wherever there *511 is a double fund, though this court will not restrain a party, yet he shall not so operate his payment as to disappoint another claim, whether arising by the law, or by the act of the testator. (p)
*512 But in making this arrangement great care must be taken not to lessen or impair, in any manner whatever, the obligation of the *513 creditor’s contract. It can only be made where all the parties are before the court, and the whole subject is within its juris *514 diction; and where it is clear, that the creditor can sustain no loss, nor be in any way delayed, or have his claim subjected to *515 any additional peril. For if the parties have not been all brought before the court; or if they cannot be brought before it; because of their not having any such privity of interest as will warrant the making of them parties to the same suit; or if the two funds cannot be embraced within the scope of the same suit; and much •more so, if they be not both of them within the jurisdiction of the court, it would be utterly impracticable to make any such arrangement in favour of any one set of creditors against another, the security of whose claim may be thus greatly endangered, and the satisfaction of which must necessarily be delayed and consequently lessened. (q)
It is believed, that although the real estate of a deceased debtor may be subjected to the payment of his debts in most of the states *516 of this Union; yet in each one, the mode of administering such assets is materially different. The general creditors have, in some states, greater difficulties to encounter than in others; the right of preference and the classification of creditors varies; and in some the real assets are within reach of all, while in other states creditors of only a particular description are allowed to resort to them. In this case the plaintiffs themselves say, by their exceptions, that the land in the District of Columbia, which has been conveyed as an additional security for this claim, No. 4, cis not liable for their claims and other general creditors.’ Why, it is not so liable, according to the law of the District of Columbia, it is unnecessary to enquire; it is enough for this court to know, that the other fund is a portion of territory, or immoveable property, subject to another government; and is governed by law which may fairly be presumed to be, in many respects, substantially different from that of this state, to demonstrate, that no such arrangement can be made which may not materially impair the obligation of the contract of that creditor against whom the funds of the debtor are directed to be marshalled; and which may not prejudice his interests, or greatly delay the satisfaction of his claim.
In the case of principal and surety there can be no doubt, that, on a bill filed by the surety, he will be allowed the benefit of all the securities of the principal, wherever they may be located, or by whatever law they may be governed; so far as this court has the power and the jurisdiction to assure to him the benefit of them. Thus, if the creditor has obtained a security, by mortgage of land in another state, or in a foreign country, the validity of which had been impaired or made questionable by the creditor himself; the surety may here have the creditor ordered to sue upon such foreign security for the purpose of testing its validity, and endeavouring to obtain satisfaction; because if the security has, in fact, by his own conduct been rendered so unavailable that he cannot recover, the surety will be discharged. And this arises as an equitable consequence of the nature of the contract by which the principal and surety are bound. (r)
The marshalling of different funds among creditors, is not, however, founded on any such equity or implied contract between debtors; but rests upon a natural and moral equity; that no one ought to be permitted, at his mere will, to derive a benefit from *517 that which must injure another; and that equality is equity, provided the court has any foundation for enforcing such equity without depriving a party of his clear legal rights, or impairing the obligation of his contract. (s)
I am therefore of opinion, that the claimant No. 4, cannot, for the benefit of the other creditors of the deceased, be required to proceed against and exhaust the fund, or land in the District of Columbia, which had been mortgaged to them as a security for their debt, before they are allowed to come here for satisfaction out of the proceeds of that fund lying within this state which had also been mortgaged to them as a security for the same debt.
It appears, that claim No. 11, the voucher of which was filed on the 30th of October, 1830, is founded on a supersedeas judgment, acknowledged by the deceased on the 17th of April, 1815, which, after having been suffered to lapse, was revived by scire facias in 1822. And, consequently, it is now a subsisting lien upon the real estate of the deceased, not barred by the statute of limitations, and, as such, is entitled to a preference over all subsequent liens, as well as over all the claims of the general creditors.
But the mortgage on which claim No. 4 is founded, bears date on the 10th of October, 1821, at a time when this judgment must have so expired, that no execution could have issued upon it; and, therefore, it could not, after that time, he revived so as to overreach the mortgage claim No. 4; and thus, upon the principles heretofore laid down by this court, (t) this judgment claim No. 11, can only he allowed a preference out of the proceeds of the really, after the mortgage claim No. 4 has been fully satisfied.
The claims No. 35 and 36, founded on judgments rendered against the deceased on the 10th of April, 1818, being the eldest liens upon the realty of the deceased, appear to he entitled to a preference over all other claims. But The Bank of the United States, wdio stands here as claimants No. 4, 5, 6,7 and 8, has relied upon the statute of limitations in opposition to these two claims; the vouchers of which were not filed until the 13th of January, 1832, and therefore they are clearly barred. And hence, according to the rule laid down, in relation to this matter, these claims, No. 35 and 36, can he allowed to obtain no portion of these assets to the prejudice of any of the claims of the Bank which may be in any manner, or to any extent sustained as against the estate of the *518 deceased; although as against all the other creditors, now before the court, except claim No. 4, they would, if not opposed by a plea of limitations, be clearly entitled to a preference; even against claim No. 11, whose right to issue an execution upon his judgment, existing at the time when these two judgments were obtained, having been suffered to expire, could not be revived so as to overreach an intermediate lien or conveyance, which during its lapse, had taken full effect. (u)
The personal estate is the fund primarily liable for the payment of debts; and therefore, if the real estate be mortgaged, the personal estate must be applied in discharge of the mortgage in relief of the realty. But where there are simple contract creditors who cannot resort to the mortgaged estate, the mortgage debt may be thrown entirely upon it, so as to leave the personalty for the benefit of the simple contract creditors. But by our law, on the personal estate being exhausted, all creditors may resort to the realty; and therefore, in administering the assets of a deceased debtor, in this court, there can rarely be any necessity for such a marshalling of the funds for that purpose, since all the assets, real and personal, are to be applied to the satisfaction of the creditors according to the priorities of their respective liens; and then in satisfaction of the rest in due proportion; applying the personalty first, so that if there be any surplus it shall be left as of the realty, and go to the heirs.
If there was here no other distinction among these creditors, than that arising from the nature of the securities of their claims as derived from the deceased debtor himself, the distribution of these assets might be made among them upon principles the most simple and obvious. But, it must be recollected, that, according to the recently established rules, an absolute judgment against an executor or administrator, although conclusive as between the creditor and executor or administrator, is not so as between the creditor and the heir or devisee; and that a plea of the statute of limitations, if established as a bar, can only enure to the benefit of him who pleads it; and besides, that although a creditor who has obtained an absolute judgment at law against an executor or administrator, will not be permitted to levy his debt by a fierifacias after a decree to account; yet he cannot, on coming in, under the decree, be compelled to part with any advantage his judgment has *519 given Mm as against the personal estate, (w) And, consequently, it will not only be necessary here to place the mortgage debt, claim No. 4, and the judgment debts, claims No. 11, 35 and 36, altogether upon the estate bound by those liens, in order to let in the general creditors, whose claims are not barred by the act of limitations as against the personalty, to obtain what they can from that fund ; but also, for the purpose of having the absolute judgments, which as regards each other, stand upon an equal footing, first satisfied out of that fund, so that the heirs, who must be allowed to be substituted for them, may obtain reimbursement from the administrator himself, to the amount of their inheritance taken to satisfy the balance of those judgments. For the amount of which balance there must be a decree over in favour of those judgment creditors; or after all the creditors have been fully satisfied in favour of the heirs, who, for so much, have a right to be substituted for those creditors against the administrator against whom those absolute judgments have been rendered. (x)
I shall therefore direct, that the proceeds of the sale of the real estate be applied first in full satisfaction of the mortgage and judgment debts, claims No. 4, 11, 35 and 36, according to their respective priorities and rights as against others; that the personal estate he first applied in full satisfaction of the absolute judgments rendered against the administrator; and then, that the residue of the personalty, if any, be applied in satisfaction of those claims which, as against it, have not been barred by the statute of limitations.
The claims of these plaintiffs, designated in the auditor’s report as claims No. 1, 2 and 3, have been established by the decree of the 4th of May, 1830; and, therefore, cannot now be impeached by any creditor coming in under that decree; unless upon the ground of mistake, fraud, or collusion with the defendants, (y) No objection of that kind has, however, been made or alluded to; and, therefore, the exceptions against them must be overruled. But then although these plaintiffs had, previously to the institution of this suit, obtained absolute judgments at law against the administrator of the deceased; yet having alleged in their bill, that there was not a sufficiency of personal estate to satisfy their claims; and *520 having obtained a decree for a sale of the realty founded on an admission of the truth of that allegation, they cannot now have a decree over, against the administrator, for any balance of their claims, that may remain unsatisfied; or take any other advantage of the absolute nature of those judgments which they have thus abandoned; or be regarded in any other way than as standing among those general creditors whose claims^ are not barred by the statute of limitations, (z)
In England and here, formerly, it was necessary, in the administration of a deceased debtor’s estate, to attend .to the distinction between debts due by specialty and those due by simple contract; because, according to the order in which the law directed the debts of the deceased to be paid, those due by specialty were to be first paid; and where the assets were insufficient to pay all, and the executor or administrator, in violation of this rule, paid them away in satisfaction of simple contract debts, he thereby made himself liable for the remaining unsatisfied specialty debts, (a) Where, however, the assets were sufficient to pay all, a simple contract debt might be safely paid, at any time, without regard to this precedence in favour of specialty debts. (b) But by our acts of Assembly, prescribing the order in which the debts of the deceased shall be paid from the personal assets; (c) and, on a deficiency thereof, from his real assets; (d) the distinction between debts due by simple contract and by specialty has been, in this respect, abolished; and, therefore, there can be no occasion to advert to it for any such purpose. It should, nevertheless, be attended to in all cases where the debtor has, by deed, bound his heirs as well as himself for the payment of the debt, as, in such cases, the creditor thereby has it in his power to sue and recover, at common law, from the heir alone, merely in respect of such assets descended, which the creditor cannot do upon any simple contract, or even specialty, whereby the heir has not been expressly bound. (e)
But it still continues to be important, here as in England, in reference to the statute of limitations, to look to the distinction between specialty and simple contract debts; because of the different limitations prescribed as an allowable bar to each, (f) A creditor *521 whose debt is secured by an instrument under seal, as by bond or deed, the money so secured is a specialty debt. In general where a deed and agreement will support an action of debt, the creditor is held to be a creditor by specially; and there are a variety of cases, where a creditor whose debt is secured by a covenant; although for unliquidated damages, has been deemed to be a creditor by specialty, (g) But in the case of principal and surely bound by a bond, if the surely pays the debt he is considered only as a simple contract creditor of the principal, (h) Where money is lent upon a mortgage, and there is a personal covenant or stipulation, in the mortgage deed, for payment, or any further security, as a bond or contract under seal to pay the debt, it is one due by specialty; but, without any such covenant or further security, it is a debt by simple contract only. The mortgaged estate being nothing more than a pledge for the money borrowed ; that is, for the personal debt; and as every loan of money creates a debt, whether there be a covenant or bond for the payment of the money or not, if there he no bond or personal covenant to pay the money it is merely a simple contract debt. (i)
But ii appears, that the deed by which this debt was secured hears date on the 12th January, 1821; and that the claim was filed on the 16th of November, 1830, within less than twelve years after; therefore it cannot be affected by the statute of limitations, which has been relied upon against it by the other creditors, as regards the realty; in addition to which it has been established, as against the personalty, by an absolute judgment against the administrator. It is, however, clear, that as all the parties to this mortgage are before the court; and the mortgaged property is within the jurisdiction of the court, it must be first applied, so far as it will go, in satisfaction of this claim No. 5. And that the claimant, if not thus fully satisfied, must be allowed to come in here, to the amount of the balance, for a due proportion with the other cre *522 ditors, whose claims have the same grade and authenticity, (j) But as this personal property so mortgaged came to the hands of the defendant Louis Maclcall as administrator de bonis non, he must be held accountable for it; and can only be discharged, in so far as it may appear, that it had been applied in satisfaction of the debt; and for so much as may not have been so applied, he alone must be charged.
The claims No. 14, 20, 25, 27, 28 and 37, are founded on specialties, not barred by the statute of limitations. Upon claims No. 14, 20 and 28, absolute judgments have been obtained against the administrator; and judgments for a proportion of the personal assets on claims No. 25, 27 and 37. The claim No. 22, the voucher of which was not filed here until the 11th of January, 1831, is founded on a note under seal, which became due on the 19th of December, 1815; and, therefore, it is clearly barred, unless it can, by some of the circumstances connected with it, be taken out of the statute.
The execution of the deed, upon which this claim, No. 22, is founded, has been admitted; and there are endorsed upon it several receipts for payments, one so late as the 4th of August, 1826; which, if shewn to be truly what they purport to be, would be sufficient to take it out of the statute of limitations. A man cannot be permitted to make evidence for himself; and the endorsements by the obligee, such as these, are not admitted to prove the original thing in demand; but being evidence in discharge of the obligor, they are only consequentially evidence in favour of the obligee, to take the case out of the presumption arising from the lapse of time. Even to this extent, however, they are regarded as evidence of a very questionable character, when it is recollected, that the security remains in the hands of the obligee; and that he may thus be under a continual temptation to fabricate such endorsements merely for the purpose of sustaining his claim for the balance. But to make such endorsements evidence for this purpose, it is necessary to shew, that they were actually made, as they bear date, within the time of limitation; for if they were made after that time, though they may be evidence of actual payments; yet they cannot be received as evidence to take the case out of the statute. (k)
*523 Here there is no proof of the hand-writing of these endorsements, or that they were really made at the time they bear date; nor of any other circumstance which can take this claim No. 22, out of the statute; it must therefore be considered as barred.
The claims No. 6, 18 and 19, are founded on simple contracts, upon which absolute judgments have been obtained against the administrator; the claims No. 9, 10, 12, 13, 15, 21, 23, 24 and 26, are founded on simple contracts on which judgments have been rendered against the administrator for a proportion of the personal assets; and the claims No. 29 and 34, are founded on simple contracts, in satisfaction of which the administrator has bound himself by single bills to pay a proportion of assets. All these claims, considered as the simple contract debts of the intestate are clearly barred by the statute of limitations as against the realty; but they are not so barred as against the personal estate by reason of those judgments and acknowledgments.
In the voucher exhibited of claim No. 8, it is said to have been secured by a deed of trust for a piece of ground in Georgetown; but no such deed has been shewn to the court; and, therefore, upon the proof, as it stands, this claim can only be regarded as a simple contract debt; and, as such, is clearly barred by the statute of limitations relied on against it. The claims No. 16,17,32 and 33, have no other foundation than that of simple contracts; and are evidently barred by the statute of limitations relied on against them.
The claim No. 7, is for costs on an absolute judgment which was recovered against the administrator; and therefore, as it is a claim which, of itself, never existed against the estate of the deceased, it cannot now be made a charge upon his estate, and must be wholly rejected. The claims No. 30 and 31, it is also clear; because of the circumstances and for the reasons stated by the auditor, in his report, cannot be sustained against either the personal or real estate of the deceased. They must therefore be altogether rejected.
It is agreed, that Christiana, the wddow of Benjamin Mackall, deceased, be allowed for her dower, in the Prince Georges lands, the sum of one thousand dollars, to be paid to her by Louis Mackall, out of the bond given by him as a purchaser of a part of the land. Hence, it is unnecessary to speak of the principles of equity by which her right of dower might have been protected, and the arrangements of the funds which might have been made for that purpose.
*524 It has been urged, that the reliance upon the statute of limitations by The Bank of the United States, comes too late after .the auditor has made a report in favour of the claims they have thus attempted to oppose.
The auditor can be considered in no other point of view than as a ministerial officer of the court; upon whom the Legislature has not, nor cannot confer any portion of the judicial power assigned by the constitution to the Chancellor. The auditor is not only subject to the control of the court, but it is also made his duty to state such accounts as may be desired by either party. The auditor adjudicates upon nothing; but merely puts in order and prepares the materials upon which the court is to decide. His report, therefore, either for or against any claim, can in no manner affect the rights of any party. (l)
According to the course of the court, in a creditor’s suit the statute of limitations may be relied on, at any time, by a party or a creditor who has neither done nor permitted any act to be done which must be considered as an express or tacit waiver of such a ground of defence or opposition to the claim, (m) In this case the right to rely upon the statute of limitations has been, in no manner, waived by The Bank of the United States, or by any other of the claimants by whom it has been insisted upon.
From this general review it appears, that claims, No. 1, 2,3, 4, 5, 11, 14, 20, 25, 27, 28 and 37, cannot be affected by any reliance upon the statute of limitations in opposition to them; that claims No. 8, 16, 17, 22, 32, 33, 35 and 36, may be barred as against the whole estate so far as the statute of limitations has been relied upon against them; that claims No. 6, 9, 10,12, 13,15,18, 19, 20, 21, 23, 24, 26, 29, 34 and 37, cannot he barred from having recourse to the personal estate by a reliance on the statute of limitations in opposition to them, although they may be barred as against the realty; and that claims No. 5, 6, 14, 18, 19, 20 and 28, having been established by absolute judgments against the administrator of the deceased have a right to go against the personal estate upon that foundation.
Upon recurring to the exceptions of the parties, it will be seen, that on the 2d of March, 1831, the day on which the auditor’s report was filed, the claimants No. 1, 2 and 3, relied on the statute *525 of limitations in opposition to claims No. 5, 6, 7, and 8; that the claimants No. 4, 5, 6, 7, and 8, by their exceptions filed on the 27th of March, 1831, relied on the statute of limitations in opposition to claims No. 1, 2, 3, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 22, 23, 24, 26, 27, 29, 32, and 33; that on the 25th of January, 1832, the claimants No. 9,10, 12, 13, 14, 15,16,17,21, 23, and 24, by their exceptions, relied on the statute of limitations as a bar to claims No. 5, 6, 7, and 8; and that on the same day the claimants No. 4, 5, 6, 7, and 8, relied on the statute of limitations in bar of the claims No. 34,35, 36, and 37.
But from what has been said in relation to these claims it appears, that although the claims No. 1, 2, 3, 5, 11, 14, 25, and 27, may be benefited, they cannot be injured by the application of the statute of limitations; that claim No. 4, on account of its priority of lien; and claims No. 7, 30, and 31, because of their being altogether excluded, cannot be, in any way, affected by the statute of limitations; and, therefore, since no man can, without utility to himself, be allowed capriciously to disappoint another of his just rights, they cannot be permitted to rely on it, either as a pretext for their own protection, or to the prejudice of any other claimant. Consequently, in marshalling the assets, in reference to the statute of limitations, as relied on, these four claims No. 4, 7, 30, and 31, must be entirely laid aside.
The leading objects, in arranging these funds, are to produce the greatest amount of satisfaction to each of the several creditors, allowing to each his just rights; to give to the most active those preferences and advantages which the law always awards to diligence ; and to avoid any such conflict of interests as may prevent a distribution of the whole in such manner as to leave any one unsatisfied, so far as the assets will go, or as may deprive any one of his due proportion. Therefore, if conflicting pleas of the statute of limitations can be no otherwise adjusted, that which has been first filed must be allowed first to operate; and where pleas of the statute of limitations have been filed by different creditors, on the same day, so as to have a countervailing operation against each other, they must both of them, so far as they so operate, be rejected.
With regard to the account of the defendant Louis Mackall, as administrator de bonis non, it is clear, that all taxes, due on the real estate of an intestate, at the time of his death, must be paid by his administrator, as public charges entitled to a preference in *526 satisfaction from his personal estate. But this administrator craves an allowance for taxes which have accrued since the death of the intestate; but no such allowance can be granted. As to the credit for $1,005, which the administrator insists on having allowed to him, I have already spoken of it in connexion with claim No. 5.
The personal estate of the deceased is to be regarded as an aggregate amount of value. It cannot be culled and parceled out so as to leave that which is of little or no value to rest as an incumbrance any where, or upon any one; but the whole must be so disposed of as to produce a clear average or aggregate amount for the benefit of all creditors first; and then for all who take after them. If, as is alleged, in this instance, the personal estate be composed in part of aged or infirm slaves, who are unable to maintain themselves, they must be disposed of with other portions of the personalty, so as not to leave them as a burthen upon any one, or upon the county. The right to have such slaves maintained by the owner, in discharge of the county, has been expressly given as a public claim, by which the estate of the deceased owner is bound; (n) and therefore, the administrator must, at his peril, make such a disposition of the estate, if practicable, as to secure to the public, that right; and he cannot be allowed, to the prejudice of the creditors, or next of kin of the deceased, to retain any thing for the maintenance of such aged or infirm slaves.
Whereupon it is Ordered, that this case be and the same is hereby again referred to the auditor, with directions to state a final account. The claim No. 4, is to be first and fully satisfied from the proceeds of the real estate that has been sold; and then from the same proceeds, the amount agreed upon, according to the terms of the agreement, is to be allowed to Clmstiana Mackall, the widow, in lieu of her dower; and then, after the satisfaction of these claims, the residue of the proceeds of the realty is to be applied in full satisfaction of claim No. 11; after which an amount is to be set apart equal to the full satisfaction of claims No. 35 and 36. The claims No. 5,6, 18, 19, 20 and 28, are to be first fully satisfied out of the personal estate, or so far as it will go, so as distinctly to shew the deficiency, if any, to be made up to each of those claimants out of the realty. But if a surplus of the personalty should remain, after *527 satisfying those claims, then a complete distribution thereof is to be made among the claimants No. 6, 9, 10, 12, 13, 15, 18, 19, 20, 21, 23, 24, 26, 29, 34 and 37. Then a dividend is to be made of the real and personal estate, among the claimants No. 1, 2, 3, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 32, 33, 34 and 37, so as to put each of them upon an equal footing, as nearly as practicable, with each other and all other claimants, except the dower claim, and claims No. 4, 11, 35 and 36, and as if the claims No. 5,6 and 8, were allowed to come in among the divisors; and then the whole residue of the estate, real and personal, is to be so distributed as to give claims No. 35 and 36 a preference for a full satisfaction against all, except claims No. 5, 6 and 8; and so as to apply the whole in satisfaction of the several remaining claims, until they are all as fully and as equally satisfied as may be, according to their respective rights. In making this final arrangement and distribution of the funds, real and personal, of this deceased debtor, the auditor is further directed to reject claims No. 7, 30 and 31, together with all others, which do not appear, at the time he makes his statement, to be fully and correctly authenticated according to the course of the court.
And it is further Ordered, that the exceptions to the auditor’s report of the accounts of the defendant Louis Mackall, as administrator de bonis non, be and the same are hereby sustained and allowed; except as to the objections to the items in account A. from No. 1 to No. 8 inclusive, which have been abandoned; Provided, that as regards the exceptions against the allowance for $1,005, it be shewn, that the whole value of the slaves mentioned in the mortgage deed of the 12th of January, 1821, has been applied by the administrator in satisfaction of claim No. 5, otherwise for so much only as has been so applied.
In pursuance of this order, the auditor made, and on the 21st of May, 1832, filed a report of a final account, distributing the whole proceeds of the estate of the deceased among his creditors who had come into this court; three of whom had filed the vouchers of their claims since the passing of the order of the 14th of February. The auditor in this report says, that the administrator de bonis non had failed to produce the evidence which was required to entitle him to the credit for $1,005, mentioned in that order; that the circumstances disclosed, induced the auditor to believe, that the administrator might be entitled to the credit, though some *528 considerable time might be required to collect his proofs and explanations. And as there was already a large sum of money in court, laying unproductive, the auditor had, therefore, thought it best to report immediately, and therein assume, that the administrator was entitled to such an allowance, the right to which might be suspended; so that if it should ultimately be determined against him, a distribution of the amount might be made without disturbing the accounts which were then reported. That he had accordingly stated an account between the administrator de bonis non, and the estate; and thereby corrected his former accounts agreeably to the directions given. And after allowing the credits as ordered, with some others proved by the vouchers lately filed, and the sum of $1,005; there appeared to be a balance in the hands of the administrator of $3,184 71, as of the 26th of July, 1830, the day of the first sales of the real estate. In all other respects the auditor’s statements conform substantially to the directions given.
It appears, that the gross amount of the sales of the real estate were $16,539 92; from which were deducted $683 17, for commission allowed to the trustees who made the sales, and $166 46 for costs; leaving a balance of $15,681 29 as the neat proceeds of the realty which, with the balance in the hands of the administrator, gave a sum total of $18,866 to be distributed, in the manner directed, among those of the forty creditors whose claims were not altogether rejected. Four of those creditors, No. 4, 11, 35 and 36, including $1,000 allowed to the widow as directed, amounting to $7,873 44, were, upon the principles laid down, entitled to a preference, and were awarded a full satisfaction accordingly. The rest of the creditors who had established their elaims were allowed a due proportion of the balance of the estate, amounting to $9,992 56, according to the amount of their respective claims as directed.
18th June, 1832.
Bland, Chancellor.
Ordered, that the foregoing report of the auditor be and the same is hereby ratified and confirmed; and the said administrator and trustees are directed to apply the assets and proceeds accordingly with a due proportion of interest. But the final adjustment of the account of the administrator de bonis non, and the further extent of his liability are hereby suspended for the reasons suggested by the auditor until further order. _
After which the proceeds of the sales, as collected, were, from time to time, brought into court, and distributed, with an allowance *529 of five per cent, to the trustees for all sums collected by them by suit as attorneys at law. Without any further controversy as to the rights of the creditors or parties, the case seems to have been, on the 28th of September, 1836, finally closed.

 Steel v. Alan, 2 Bos. & Pul. 362; Pillop v. Sexton, 3 Bos. & Pul. 550.

 Carew v. Johnston, 2 Scho. & Lefr. 292.

 2 Mad. Pra. 333; Mitf. Plea. 104; Snell v. Hyatt, Dick. 287; Lloyd v.—.,Dick.460.

 Sherwood v. Sanderson, 19 Ves. 289; Ex parte Tomlinson, 1 Ves. & Bea. 57; Brodie v. Barry, 2 Ves. & Bea. 36 ; Ex parte Evelyn, 7 Cond. Cha. Rep. 232; Exeter v. Ward, 7 Cond. Cha. Rep. 258; Rebecca Owings’case, 1 Bland, 290; Colegate D. Owings’ case, 1 Bland, 372. — In the matter of Ann Oliver, 29 Com. Law Rep. 165

 Mitf. Plea. 104; Leving v. Caverly, Prec. Chan. 229; Sheldon v. Aland, 3 P. Will. 111, n.; Wilson v. Grace, 14 Ves. 172; Barrett v. Tickell, 4 Cond. Cha. Rep. 70; Howlett v. Wilbraham, 5 Mad. 423; Carew v. Johnston, 2 Scho. & Lefr. 292.
Worthington ». Craddock. — Bill for a conveyance in specific performance of the agreement of the deceased ancestor of the defendants. Subpcena issued and returned summoned. A writ de idiota inquirendo issued to enquire into the idiocy of the defendant Eleanor Worthington. Inquisition taken and returned finding her an idiot, which being confirmed, John Craddock was appointed her committee, required to give bond, &c. Whereupon John Craddock and Benjamin Nicholson were appointed a committee for the idiot, to take her answer and defend the suit in her behalf.
October, 1784. — Decreed, that a conveyance be made as prayed; and that a day be given to the infants to shew cause on their coming of age as usual. But there was no reservation as to the idiot.— Chancery Proceedings, lib. No. 2, fol. 135, 265, 272.

 1 Fonb. Eq. 64; Donegal’s case, 2 Ves. 408; Wartnaby v. Wartnaby, 4 Cond. Cha. Rep. 173 ; Colegate B. Owings’ case, 1 Bland, 372.

 Mitf. Plea. 249; Hammond v. Hammond, 2 Bland, 349, 388.

 Kenebel v. Scrafton, 13 Ves. 370; Hammond v. Hammond, 2 Bland, 388.

 St. Antonio v. Adderly, 12 Cond. Cha. Rep. 372.

 1820, ch. 161, s. 1.

 Hammond v. Hammond, 2 Bland, 365.

1) Welsh v. Stewart, 2 Bland, 41; Serndale v. Hankinson, 2 Cond. Cha. Rep. 198.

 The State v. Cox, 2 H. & G. 379; Iglehart v. The State, 2 G. & J. 245; Gaither v. Welch, 3 G. &. J. 259; Ellicott v. Welch, 2 Bland, 247.

 McCormick v. Gibson. — This bill was filed, on the 19th of January, 1824, by James McCormick, jr., against Fayette Gibson, Edward R. Gibson, Nancy Gibson, Rebecca Gibson, Thomas P. Bennett and Harriet his wife, Joseph W. Reynolds and Ann his wife, James Tilton and Frances his wife, Clara Tilton, Nehemiah Tilton, Rigby Hopkins, John W. Blake, Edward Lloyd, and the President, Directors and Company of the Farmers’ Bank of -Maryland.
The object of the bill was to have the real estate of Jacob Gibson, deceased, sold, because of the insufficiency of his personal estate, for the payment of the amount then due on a promissory note given by him for §2,500, which had, by several endorsements, passed into the hands of the plaintiff. On the 10th of November, 1824, the defendant James Tilton, put in his answer. On the 27th of September, 1824, the defendant Edward Lloyd, filed his answer. On the 12th of October, 1824, the Bank made answer, stating its defence; and shewing, that it held, as a security for its claim, a mortgage given by the deceased, of his tract of land called Marengo; but the deed of mortgage contained no relinquishment of the right of dower of the wife of the grantor; nor any personal covenant for the payment of the money.
On the 4th of February, 1825, the defendants Bennett and wife, filed their answer, in which, among other things, they say, ‘that they have always well hoped and believed, that the personal estate of the said Jacob Gibson, together with the proceeds of the sales of the property by him devised to be sold, and the rents and profits of the real estate, as directed by the last will and testament of the said Jacob Gibson, to be applied towards the payment of his debts, would have been amply sufficient to discharge the same, and all expenses of administration, had the administration thereof been conducted according to the intentions of the said Jacob Gibson as expressed in his said will; but these defendants allege and say, that the said personal estate of the said Jacob Gibson, or the greater part thereof, was retained and not sold till nearly two years after his .death, and thereby a considerable loss was incurred by the estate ; that the real estate retained by the executor was greatly mismanaged by him, and the profits thereby considerably diminished; that the land purchased from Samuel Y. Garey and wife, which was ordered to be conveyed to Henry Grace, in case he would pay the price ,or purchase money contracted by him to be paid to the *500 said Jacob Gibson, for the same, was sold by the executors to other persons at a much less price, and was denied to the said Henry Grace, as these defendants have been informed, although he offered to pay for the same the price he had contracted to give, by which means a loss of upwards of five hundred dollars was incurred, and that the said executor has altogether omitted to charge himself with the proceeds of the sale of said land. That the suit between the said Jacob Gibson and James Tilton, jun., respecting certain negroes of considerable value was given up by the said executor Edward R. Gibson,and not prosecuted by him; that $2,063 62 worth of property, which was appraised, was never sold; but alleged by the executor aforsaid, to have been either lost, worn out, used in the family, or not worth being sold; that the said executor received an allowance of ten per cent, commission on $21,972 47, the amount of the personal assets returned by him, instead of six per cent, commission, as was the wish of the said Jacob Gibson ; that the said executor also charged the estate for expenses incurred by him in making crops of wheat and Indian corn, &c. in the years 1818, and 1819, amounting to the sum of $14,342 50, the enormous sum of $6,512 67, and was allowed the same.’
■ On the 15th of July, 1825, the defendants Payette Gibson and Blake, filed their answers ; the non-resident defendants having failed to answer as warned by publication, and the other defendants having also failed to answer, the case was brought before the court; and on the 22d of January, 1828, the bill was dismissed by the Chancellor with costs; as to which, see 3 G. & J. 13. The reasons and grounds ■of the Chancellor’s decree having been more fully considered in the analogous case of Lingan v. Henderson, 1 Bland, 236. Prom this decree the plaintiff appealed; and the case having been brought before that tribunal was heard by it as constituted of Judges Buchanan, Martin and Dorsey.
13th July, 1831. — The Court of Appeals. — This case having been argued by the cofinsel for the appellant, and considered by the court; and, for as much as it appears, that, there is error in the decree of the Chancellor, the plea of limitations, filed in the cause, not operating as a bar to all relief; but only as a protection to the interest of the party pleading it, in the land sought to be affected by the bill of the complainant; and the court being of opinion, that the appellant was entitled to relief.
It is therefore Decreed, that the decree of the Chancellor passed in this cause be and the same is hereby reversed with costs in this court. And that the said cause be remanded to the Court of Chancery, and that the Chancellor pass such order and decree in the premises as justice and equity may require.
For the opinion of the Court of Appeals on which this decree was founded, see 3 G. & J. 16. — This decree, a certified copy of which was filed in this case, appears to have been signed by Judges Martin and Dorsey only. The constitution declares, that the Court of Appeals shall be constituted of six judges, all of whom are competent to sit on every appeal from the High Court of Chancery; and the constitution also declares, that ‘any three of the said judges of the Court of Appeals shall form a quorum to hear and decide on all cases pending in said court.’ Hence, it would seem, as every decree must be signed, as in the English Court of Exchequer, by every judge who was present at the making of it, 2 Fowl. Exche. Fra. 168, to make a valid decree in equity by the Court of Appeals, it should be signed by at least three judges. The county courts are constituted of three judges, any one of whom is made competent to hold a court; and, consequently, a decree of a county *501 court signed by any one of its judges, because of Ms being the court, must be deemed valid.
After various other proceedings, for the principal part of which see 10 G. & J. 67, this case was again submitted for a final determination.
ISth May, 1836. — Bland.—Chancellor.—It will be-seen, by adverting to the proceedings, that the defendant James Tilton, in his answer, relied on two distinct grounds of defence, each of which apparently, covered the whole of the plaintiff’s cause of suit as regarded the real estate of the deceased; first, the statute of limitations ; and secondly, the sufficiency of the personal estate of the deceased to pay all his debts. Considering the reliance upon the statute of limitations, if sustained, as an entire bar, it was obviously unnecessary to say any tiling as to the sufficiency of the personalty. And, on the reliance upon the statute by this defendant being declared, by the Court of Appeals, to be only a protection of his interest in the realty, it could not be proper, upon any allegation of his only, to call for an account of the personalty, because his interests having been thus fully protected, the taking of any such account, at his instance only, might well bo regarded, in relation to all others, as an impertinent and unnecessary interference with the further progress of the case. The same principles apply to the answer of Clara Tilton, who, in her answer, made after she had attained her full age, has, in like manner, relied upon the statute of limitations and the sufficiency of the personal estate.
It appears, however, that the defendants Bennett and wife had also, in their answer, relied on the sufficiency of the personal estate and the other appropriated funds. That that allegation of theirs had heen distinctly placed, by the record, before the Court of Appeals; and, if available, in any degree, in favour of the realty, seems to have necessarily called for a decree or direction from that tribunal, that an account be taken of the personalty; as usual, in all cases of this kind, where the alleged insufficiency of the personalty or appropriate fund is contested by an heir or devisee. — Campbell’s case, 2 Bland, 225; Hammond v. Hammond, 2 Bland, 347, 35-1. — But, as nothing has been said by that tribunal as to any such account, this court may now, therefore, treat it as a conceded or established fact, that the personal estate of the deceased, including so much of the profits and the sales of his real estate as he had appropriated to the payment of his debts are insufficient for that purpose; and proceed accordingly to direct the real estate indiscriminately to be sold.
The defendant Rebecca Gibson has had her claim, in lieu of dower, under the will of her deceased husband, brought fully before the court, by the bill of complaint; and, yet she has made default, and still remains silent and passive. The devise to her, in lieu of dower, may be entirely equivalent in value to her legal right; and by her acceptance of it, as such, it must be presumed, that she has hitherto so regarded it. No one of these parties has objected to the having of it, or of her dower awarded to her, in kind, or in any other form. This devise to her, in lieu of dower, is one of singular complexity, and difficult to be disposed of, with a due regard to the interests of the devisees, and the creditors of the deceased. For, as regards the mortgaged estate, there being no personal covenant in the mortgage deed for the payment of the money, it follows, that in so far as this incumbrance in lieu of dower should be thrown upon it, so as to leave any balance unsatisfied, the claim for such balance would be thereby reduced to the grade of a mere simple contract debt, so as in that, and in other respects, to be regarded as a devise to the prejudice, and in fraud of creditors, and void under the statute.
*502 Therefore such a decree, as may he deemed safe as to the widow, and most beneficial to all others, may be now made, as is usual in similar cases, directing the real estate to he sold, disregarding this devise to the widow, and leaving her to come in, according to the rule of the court, for a proportion of the proceeds of the sale in lieu of her dower at the common law, to which she and all concerned have thus tacitly admitted she may safely be remitted in place of the devise. — -Maccubbin v. Cromwell, 2 H. & G. 444; Margaret Hall’s case, 1 Bland, 203.
The claim of the complainant being established to the satisfaction of the Chancellor, except as against the defendants James Tilton and Clara Tilton, to the extent of whose interests it is barred by the act of limitations ; and, it appearing that the personal estate of the said Jacob Gibson, deceased, is not sufficient for the payment of his debts. Decreed, that the bill of complaint be taken pro confesso against the absent defendants, &c. and against the defendants Nancy Gibson, &c. Decreed, that the real estate of the said Jacob Gibson, deceased, or so much thereof as may he necessary, be sold for the payment of the mortgage claim of the defendants, The Farmers’ Bank, and the claim of the complainant as stated in the proceedings, and all other debts due from the said Jacob Gibson, deceased; that John Scott be appointed trustee to make the said sale, &c. (in the usual form.) And at the time of advertising said sale the trustee shall give notice to the creditors of the said Jacob Gibson, deceased, to file their claims with the proper vouchers in the Chancery office within four months from the day of sale. Decreed, in conformity with the decree of the Court of Appeals, that the answer of the defendant James Tilton; and, according to the principles of the same decree, the answer of the defendant Clara Tilton, he, and they are hereby declared to operate as protections to the interests of the said defendants in the real estate aforesaid, as against the complainant. And in taking the account of the claim of the complainant the auditor is directed to treat it as having been paid in proportion to the extent of the interests of the defendants James Tilton and Clara Tilton; to which extent they would have been required to contribute towards the payment thereof in respect of the interests acquired by them under the will of the said Jacob Gibson, deceased, if the aforesaid answers had not been filed. And the parties are hereby authorized to take testimony in relation to the said proportional deduction from the said plaintiff’s claim, before any justice of the peace, on giving three days notice as usual; provided, that such testimony be taken and filed in the Chancery office within four months after the day of the said sale.
From this decree some of the defendants appealed, and the case having been brought before the Court of Appeals, the decree of the Chancellor was modified as set forth in 10 G. & J. 100.
Under this decree of the Court of Appeals the case having been returned to the Court of Chancery, the auditor on the 8th of May, 1840, reported, that he had examined the proceedings, and from them stated all the claims exhibited against the estate of Jacob Gibson, deceased; also an account marked A.between the personal estate of this deceased, and the executor thereof; and also an account marked B. between the real estate of this deceased and the trustee for the sale thereof; with sundry statements marked No. 1, 2, 3, 4 and 5; all herewith filed. That in account A. the amount of the personal estate, and the proceeds of the real estate as directed by the will to be applied to the payment of debts, according to the administration *503 account passed by the Orphans Court of Talbot county, is applied to the payment of the commissions and expenses and preference claims, as stated in said Orphans Court account; and the net balance proportionally distributed among all the paid and unpaid creditors of the deceased, who were not entitled to be preferred in the disposition thereof, whereby it appears, that these unpreferred creditors should have received as of the day of passing said Orphans Court accounts, §0.61106 per centum of the amount of their claims. That in account B. the proceeds of the sale of the real estate are applied to the payment of the trustee’s allowance for commission and expenses; and the costs of suit of the complainant and appellant in the ihst appeal, and of the appellees in the second appeal; for taxes due upon the estate sold; then to the satisfaction of the mortgage debt due to the defendant The Farmers’ Bank, and the balance left unappropriated, because of its inconsiderable amount, and the many difficulties now attending a distribution thereof among the other creditors of the deceased.
The auditor further says, that claims No. 3, 4, 5 and 8, are not proved as the act of Assembly requires; that the original causes of action are wanting to support claims No. 3, 4 and 5; that all the devisees of the deceased plead the statute of limitations to claims No. 2 and 7; that James Tilton and Clara Tilton, and the heirs of Harriet Bennett plead this statute to claims No. 3 and 8 ; that Reynolds and wife plead this statute to claims No. 2, 3, 4, 5, 7, 8, 9 and 10. The auditor submits to which of these claims the statute applies; and that those claims, viz: No. 2, 3, 4, 5, 7, 8, 9 and 10, in the mean time be suspended. He further reports, that claim No. 10 appears to be a judgment recovered by the claimant of No. 7, against James Tilton, as the surety for the same debt as No. 7; and the auditor submits how far this judgment supports claim No. 7, as against any interest said Tilton may have in this estate. That the tax bills are not proved ; nor have they been sanctioned by the trustee; it is, therefore, submitted, that they be suspended. He also reports, that many of the devisees, as well as tire defendant, The Farmers’ Bank, require, that the claims should be fully proved; and that claims No. 2, 3, 4, 5, 7, 8 and 9, are not fully proved.
The auditor further reports, that he has assigned so much of the balance of the proceeds of sale to the satisfaction of the mortgage debt of the defendant, the Farmers’ Bank; because the whole sales were of the mortgaged premises. But, as the Court of Appeals, in their opinion delivered in this cause, at the December term, 1838, a copy of which is filed, say, that there may exist a state of things in which this mortgage claim may be reduced, certain statements are submitted in illustration of this point. That part of the opinion is as follows: ‘If it should turn out, that the residue of that part of Marengo, devised to Fayette Gibson, and not by him conveyed to Edward Lloyd or John Blake, united with the other parts of Marengo, to which Fayette Gibson was entitled, after paying their just contribution towards the mortgage debt, and all other debt3 of the deceased, should prove inadequate to the payment of that portion of the mortgage which the part of Marengo devised to Fayette Gibson was bound to contribute ; then with reference to the other devisees, owners of Marengo, the mortgage debt of the Bank must be deemed satisfied and paid to the extent of such inadequacy.’ Statement No. 1, shews the value of Jacob Gibson’s real estate at the time of his death. Statement No. 2, shews tbe value of the same, as of the time of taking the testimony in relation thereto. Statement No. 3 and 5, by whichMt appears, in these views of the proof, there will be such a deficiency as is intimated in the opinion of the Court of Appeals. And statement No. *504 4, by which, in another view of the proof, there will be no such deficiency. The proof, in relation to all these statements, is vague, and much of it derived from papers filed in this cause without a commission; moreover, it is applicable to different periods of time, much of it founded on estimates merely, and omits the valuation of some real estate of which, it would seem, the deceased died seised. These statements, 3 and 4, assume, that all the debts filed are to be paid; whereas to the most of them the statute of limitations has been pleaded by the devisees, and other parties, the Bank among the rest; and if it apply to them, then even the deficiency appearing on the statement No. 3 would be reduced to a small sum, if not entirely disappear.
The auditor further say3, that in the event of the Chancellor’s being of opinion, that these statements make it doubtful if the Bank can now receive the whole of its mortgage debt, it would seem, this doubt may be removed by the effect of the right of the Bank to claim by way of substitution, in the stead of the unpreferred creditors who have been paid off by the Orphans Court accounts, as is recognized by the opinion of the Court of Appeals. Tor, as the personal estate of Jacob Gibson, deceased, which would, if properly administered, have paid to all the unpreferred creditors thereof $0.61106 in the dollar, as per account A. has been illegally administered, with the approbation of the devisees of the testator, whereby the creditors, the Bank among the rest, have lost this dividend, they are entitled to claim the same now, by way of substitution to the rights of these creditors so paid off; so that the Bank, for its claim No. 6, $13,739 55, should be entitled to $8,395 89, as against all the devisees; and according to statement No. 1, to upwards of $3,000; and according to statement No. 2, about $4,000, as against these proceeds of sale, either sum exceeding the deficiency estimated by statement No. 3 and 5.
It is therefore submitted, that, in this view of the case, the Bank has a claim against the mortgaged estate sold, by way of substitution to the rights of the creditors paid off out of the personal estate, to a much larger sum than can be the deficiency of its contribution by reason of the release to Lloyd; and, therefore, none of the parties to these proceedings are injured by the payment to the Bank of its entire claim out of these proceeds. Again, the Bank released Lloyd’s part of Marengo, on condition that the proceeds thereof, as bought by Lloyd, should be applied to the payment of the debts of Jacob Gibson, deceased, which proceeds were accordingly, without objection by the parties, so applied, so that the release of the Bank, though its operation was to diminish the fund liable for the payment of the mortgage debt; yet, as the value of this released mortgaged estate was applied to the payment of the other debts due by the deceased, to the exoneration of the real estate of the other devisees of the testator therefrom, it would seem, these other devisees cannot now object to this release, unless they permit the Bank and Lloyd to claim, byway of substitution to the rights of the creditors so paid off by the terms of the release. This would increase the amount to which the Bank would be entitled, by way of substitution, and render it still more improbable, that any injury could result to these parties by paying off the whole of its mortgage debt.
The auditor further reports, that there is not now, in this cause, sufficient evidence from which he can accurately ascertain what should be the deduction from the plaintiff’s claim, No. 1, by reason of the successful plea of the statute of limitations thereto by James Tilton and Clara Tilton; and he submits, that further proof be taken for that purpose. He also reports, that James Tilton was fine of the sureties of Edward R. Gibson on his bond as executor of the deceased/f and, in order to the *505 indemnity of himself and his co-surety, Edward R. Gibson, conveyed by mortgage to them all his real estate devised to him by the deceased, prior to any of the conveyances thereof now among the papers. That claimants of Wo. 1, 3, 4, 5 and 7, have recovered judgments against this executor for their legal dividends of the assets of the deceased respectively, but have not received the same. That the personal estate of the deceased appears to have been long since fully paid off; the said Edward R. Gibson and James Tilton are both non-residents of this state. The auditor submits, therefore, if under these circumstances, the interest of said Tilton in this estate should not be held liable for the payment of the legal dividends of the personally on these judgments; and also, how far these creditors can avail themselves of this mortgage; and of their judgments to prevent the operation of the statute of limitations, as pleaded against them by the said Edward R. Gibson and James Tilton; those claiming under them, or of the mortgaged premises, as a security for the payment of their debts.
The auditor further reports, that the claimant Wo. 9, alleges, in his petition, among other matters, that he has a right to be reimbursed the amount of his said claim, as well out of the estate of the deceased, as out of any interest Edward R. Gibson or James Tilton may have therein, to all of whom he claims to stand in the relation of surety; that he claims to stand in the relation of co-surety to Eayette Gibson ; and having paid, on account of the principal debtor, the amount of this claim, that he is entitled to be reimbursed one-half thereof out of any interest Fayette may have in the estate. He alleges, that Edward R. Gibson and James Tilton are non-residents, and that there is no other fund from which he can obtain payment. The auditor submits the effect of their several protections upon the respective interests of the parties.
And the auditor further reports, that since the preparation of these accounts and report, Francis G. Sheets and Clara his wife, formerly Clara Tilton, have filed their plea of the statute of limitations, and objected to all the claims ; and that the heirs of Harriet Bennett and John W. Blake have filed the same plea and objection to all the claims, except that of the complainant.
On the 23d of December, 1836, the defendants Reynolds and wife, Edward R. Gibson, Fayette Gibson, the heirs of Harriet Bennett, the heirs of John W. Blake, and the devisee of Lloyd, relied on the act of limitations, laches, and lapse of time, against claim Wo. 7. On the 22d of July, 1836, the defendants Reynolds and wife, relied on the act of limitations against claim Wo. 2. On the 11th of February, 1837, the defendant Rebecca Gibson relied on the act of limitations against claims Wo. 2 and 7. On the 16th of May, 1839, the defendants Clara Tilton and the heirs of Harriet Bennett, relied on the act of limitations against claims Wo. 2, 7 and 8. On the 8th of February, 1840, tiie defendant The Farmers’ Bank, relied on the act of limitations, laches, and lapse of time, against claims Wo. 2, 3, 4, 5, 7, 8, 9, and 10; and required, that the same should he fully proved. On the 25th of February, 1840, the defendants Sheets and wife, and the heirs of John W. Blake, and of Harriet Bennett, relied on the act of limitations against claims Wo. 2, 3, 4, 5, 6, 7, S, 9 and 10; and Sheets and wife, at the same time, relied on the act of limitations against claim Wo. 1. On the 16th of September, 1840, the defendants James Tilton and wife, relied on the act of limitations against claims Wo. 2, 3, 4, 5, 6, 7, 8, 9 and 10. On the 19th of October, 1840, Lloyd’s devisee relied on the act of limitations against claims Wo. 2, 3, 4, 5, 6, 7, 8, 9 and 10; and also required full proof thereof.
On the 3d of Wovember, 1840, the defendant the Bank, excepted to the claims of *506 Lloyd and Blake, grounded on their alleged payment of debts due by the deceased, as having no just foundation; and as being barred by the act of limitations. And on the same day the plaintiff excepted, in like manner, and also relied on the act of limitations against claims No. 2, 3, 4, 5, 7, 8, 9 and 10.
On the 11th of July, 1840, the heirs of Harriet Bennett and of John W. Blake, excepted to the report of the auditor; 1st. That the claims to which they have objected have not been rejected. 2d. That in the said report he has assumed two valuations of the real estate, neither of which is based on sufficient testimony. 3d. That he has assumed as the basis of valuation the estimate made many years ago; whereas, it ought to be taken as of its present value. 4th. That having assumed as the basis of value an estimate made many years ago, he has reduced the estimate to make it correspond with the difference between the estimate of Marengo and the sum for which it actually sold; whereas, different causes may have operated to increase or diminish in equal or less degree the value of each piece of property; and the assumption is without proper evidence to sustain it. 5th. That he has not shewn what deduction ought to be made from the claim of the complainant in consequence of the plea of limitations, set up and allowed, of Clara Tilton and James Tilton. 6th. That he has not shewn what part of the claim of McCormick the plaintiff, as against the heirs of Gibson, rests upon the ground of substitution; and what part of the portion of the said claim to be paid by these defendants they ought to be relieved irom, under the opinion of the Court of Appeals, in consequence of a failure of proof as to the claims paid out of the personal estate, in whose place a substitution on the part of McCormick is sought to be established. 7th. That the said report is not complete and full, and does not shew the liabilities of any portion of the estate, as it ought, of all and every part before justice can be done to the heirs, the complainant, the Bank, or other creditors. 8th. That the whole purchase money of the property sold, after deducting costs, and the trustee’s expenses, are applied to the Bank mortgage debt, whereas it may happen, that the part sold is not sufficient for the payment of the mortgage, and that portion of the general debts which may be thrown upon it; and that such an appropriation ought not to be made, because of the right to substitution, as stated by the auditor; for the reason that these defendants object to the claim of the Bank, and plead limitations thereto, whenever made on the ground of substitution, or otherwise than under the mortgage upon the mortgage property. 9th. That there is no proof of the validity of the debts mentioned in account A. and the auditor erred in assuming them to reach such an amount as to reduce the personal estate to $0.61106 in the dollar; or any other part of a dollar, less than the whole. 10th. That statements 3, 4 and 5, are erroneous, because thewhole of Marengo ought to be estimated, and its value ascertained, and the excess of value over and above the payment of the mortgage, ought to be applied to the payment of the general debts like the rest of the property of the deceased; and not otherwise, so far as these defendants are concerned.
On the same day the heirs of John W. Blake excepted to the auditor’s report, because no account has been returned allowing in their favour, and as a deduction from that portion of the debts which the property sold to their father ought to pay $5,000, relied upon by the answer of the said Blake, as being a part of the purchase money paid to this Bank, in liquidation of a just debt due by the estate.
On the petition of the heirs of Harriet Bennett the parties were authorized to take testimony before any justice of the peace in relation to the facts presented by the auditor’s report. And some time after the case was again brought before'the court.
*507 7th December, 1840. — Biand, Chancellor. — This case standing ready for hearing on the auditor’s report, filed on the 8th of May last, and having been submitted on notes by the solicitors of the parties, the proceedings were read and considered.
It must he recollected, that, according to the decree of the Court of Appeals, no sale is to be made of that part of the real estate to which the defendant Clara Tilton is entitled, and that the rights of the defendants James Tilton and Rebecca Gibson, are to be expressly reserved. The effect of which being to close the suit as to them, and to prevent any funds of theirs from being brought into court, there can be no claim made by any one, either as creditor or surety, against the interests of all or of any one of them ; nor can they, or either of them, whose interests in the subject in controversy have been so finally and conclusively protected, have any standing here to plead the statute of limitations against any one else. Subject to the rights, thus declared, of these three defendants, the claims of the plaintiff McCormick, and the defendant the Bank, having been finally established, by the decree of the Court of Appeals, they cannot be affected by any plea of limitations which may have been since directed against them by any other creditor or party. The mortgage debt due to the Bank must be first satisfied out of the proceeds of the sale of the mortgaged estate, leaving the surplus, if any, to be charged as a portion of the property of the devisee to whom that estate had been devised; but, if the proceeds of the sale of the mortgaged estate should not be sufficient to pay the mortgage debt, then the Bank must be let in among the general creditors for such balance; — 2 Mad. Chan. Pra. 655; Greenwood v. Taylor, 4 Cond. Chan. Rep. 381; Hammond v. Hammond, 2 Bland, 384; and, for the protection of that balance, be allowed to have the benefit of its plea of limitations against any other of the general creditors of the deceased.
In making the distribution of the proceeds of the sale of the real estate to the satisfaction of the creditors of the deceased, it is indispensably necessary to have a correct statement made of tlie amount of the claim of each creditor; and also to shew the fund upon which alone those claims are chargeable. Rebecca Gibson’s interest in the estate of the deceased being in the nature, and in lieu of dower; and, as such, expressly reserved, must, therefore be first ascertained, and set apart as forming no portion of that fund upon which any creditor of the deceased can have any claim whatever. And the interests, other than the mortgaged estate liable for the mortgage debt, of Clara Tilton and James Tilton, having been placed, by the decree of the Court of Appeals, beyond the reach of this court in this suit, cannot be deemed a part of that fund out of which any creditor, now here, can have awarded to him payment of any portion of his claim.
A claim for contribution, either at law or in equity, can only arise as between or among co-sureties on the failure or insolvency of their principal; or where two or more being liable, in respect of, and in due proportion to the assets or effects respectively held by them, and one has paid the whole, or more than his due proportion of the debt. A claim for contribution being a secondary one, arising among co-debtors or those chargeable as such, can never bo made or adjusted to the prejudice of a creditor in any way whatever. And therefore, as there has not been, as yet, any case of contribution brought before the court, no further notice need be taken of the principles of law or equity, in relation to such a case ; and especially as it can only be made after all the claims of the creditors of the deceased have been definitively adjusted. — Harbert’s case, 3 Co. 12; Long v. Short, 1 P. Will. 403; Harris v. Ingledew, 3 P. Will. 98 ; Lingard v. Bromley, 1 Ves. & B. 116 ; Dering v. Winchelsea, 1 Cox, 318, Headley v. Readhead, Coop. 50; Mayhew v. Crickett, 2 Swan. 192; Cheesebrongh v. Millard, 1 John. Ch. Ca. 415; 1 Mad. Cha. Pra. 233.
*508 • But, in respect to the claim of the plaintiff McCormick, founded as regards the whole real estate of the deceased debtor, on a promissory note for $2,500; and, as such, being an apparently indivisible cause of suit, it has been finally determined, that the pleas of limitations which had been successfully directed against it, by the defendants James Tilton and Clara Tilton, enured only to their own benefit, and operated no farther than as a protection of their interests, by shewing that the plaintiff’s claim had been satisfied as to them. Hence it now becomes necessary to ascertain to what that proportional satisfaction amounts. These protective pleas operate as a bar of so much of the plaintiff’s claim existing at the time of the death of the deceased; and which, after deducting from it any payment obtained, orto which it was entitled from the personal estate, might otherwise have been charged upon the realty in the hands of these two defendants. — Haslewood v. Pope, 3 P. Will. 325. And, therefore, their protective pleas operate as a bar of all costs, &c., incurred in this suit; and as presumptive evidence of the payment, in some way, of such a proportion of the whole debt so chargeable upon the whole of the, deceased’s real estate, exclusive of the mortgaged estate, actually applied to the satisfaction of the mortgage debt, as the value of their interest therein bears to the value of the whole real estate of the deceased at the time of his death, when their interests vested; and to which time their protective pleas relate. — Long v. Short, 1 P. Will. 403, note; Craig v. Baker, 2 Bland, 238, note. — James Tilton’s life interest to have a value set upon it as of that date by the Chancellor, as usual, on proof of his then age, health, &c. This proportional deduction, unlike a claim for contribution, is an immediate and preliminary right according to which the claim of the creditor must be cut down before any others, who may be liable, can be called upon to pay the sum thus ascertained to be due.
In regard to all creditors, other than those herein before spoken of, it must also be recollected, that the statute of limitations, in general, enures only to the benefit of him who pleads it; that no creditor, who has a prior right of satisfaction, or has failed to sustain his claim, or whose claim has been, in any way, wholly barred; and who, consequently, has no interest to benefit or protect by a plea of limitations, can have any standing in this court to direct such a plea against, or to the prejudice of any one else. — Lingan v. Henderson, 1 Bland, 276. — That as the personal estate is primarily liable, a well sustained plea of the statute of limitations, by an executor or administrator, against the claim of any creditor must necessarily enure to the benefit of the heirs; and, so too, a complete bar of any kind as against the personalty must, to the same extent, be allowed to operate as a bar for the protection of the realty.— Tessier v. Wyse, ante 28; 8. C. 4 G. and J. 296. — But although the executor or administrator may not have pleaded the statute of limitations; or may have failed to establish such a plea when relied on, nevertheless such a plea may be made available by the heirs to cover the realty, a judgment even, against an executor or administrator, being no authentication whatever against the heirs. — Duvall v. Green, 4 H. J. 270; Putnam v. Bates, 3 Cond. Cha. Rep. 355; Dorsey v. Hammond,, 1 Bland., 470. — That as a plea of the statute of limitations by one of several heirs enures to his benefit only, such a sustained plea by an heir operates as a bar of only such a proportion of the creditor’s claim as the whole of it bears to that of such heir’s interest in the whole real estate; that of the several pleas of limitations, relied on by *509 the several creditors, that which has been first pleaded and filed must be first applied and have an operation to the exclusion of any subsequent plea of limitations against the claim of him who so first pleads; but where pleas of the statute of limitations have been filed by different creditors on the same day, so as to have a countervailing operation against each other, all such pleas must be rejected so far as they so operate ; that no plea of the statute of limitations can be of any avail against a claim stated in the bill and expressly or tacitly allowed by the decree, unless upon the ground of some specified fraud. — Strike’s case, 1 .Bland, 68; Williamson v. Wilson, 1 Bland, 441; Welch v. Stewart, 2 Bland, 38; Hammond v. Hammond, 2 Bland, 359. That no plea of the statute of limitations can be allowed against any claim not then filed or put upon the record; that a plea of the statute of limitations against a claim may be put in at any time after its voucher has been filed; provided he who so pleads has not done any act which necessarily implies a waiver of a reliance on such plea.— Welch v. Stewart, 2 Bland, 41. — That all directions by a party or creditor to the auditor, or exceptions to his report which, in substance, rely upon the statute of limitations as a bar to any claim then filed, other than those of the plaintiffs, are to be considered as sufficiently formal pleas to that effect, subject to the before mentioned rules. — Strike’s case, 1 Bland, 93 ; Norwood v. Norwood, 2 Bland, 481, note. And that the statute of limitations runs up to the time of filing the voucher of the creditor’s claim.— Welch v. Stewart, 2 Bland, 41. — But if it does not appear, or is not shewu when the voucher was filed, it cannot be taken to have been filed before the day on which it appears to have been first stated by the auditor, or the day of filing the plea in which it is first noticed.
In order to give full effect to the right of substitution to which any creditors, so far as they may not have a right of preference in virtue of any lien, may be entitled, the proceeds of the sale of the real estate must bo so distributed as not to award any thing to a creditor who has received any payment from the personal estate until all the other creditors have received an equal proportion of satisfaction from the realty.— Hammond v. Hammond, 2 Bland, 384; Wilson v. Paul, 11 Cond. Cha. Rep. 320; Mitchelson v. Piper, 11 Cond. Cha. Rep. 321. — For which purpose a statement must be made shewing how the personal estate of the deceased has been disbursed among his creditors; and the amount of the debts paid by those who the Court of Appeals have declared have a right to be substituted in the place of such creditors of the deceased. Kothing, however, can be returned to any one of these defendants as devisees of the deceased, as the surplus of the proceeds of the sale of the real estate devised to Mm, until he has made good, from such surplus, all that for which he may be in any way liable to the estate of the deceased, or to any one or more of the other devisees.
All these directions must be controlled by, taken and construed in conformity to the opinions, directions and decrees of the Court of Appeals. And the said report of the auditor, and the exceptions thereto, so far as the same may be at variance with these directions, are hereby overruled.
Whereupon it is Ordered, that this case bo and the same is hereby referred to the auditor, with directions to state an account or accounts accordingly, from the pleadings and proofs now in the case, and from such other proofs as may be laid before him ; from which he will exclude all claims not then sufficiently authenticated; and also all others not then fully proved, where full proof has been required by any one competent to plead the statute of limitations, and also to require full proof for the protection of his own interests. — Dorsey v. Hammond, 1 Bland, 471__And the par *510 ties are hereby authorized to take testimony in relation to the said account before any justice of the peace, on giving three days notice as usual: Provided, that the said testimony be taken and filed in the Chancery office in this case, on or before the twentieth day of February next.
The time allowed by this order for the taking and returning of testimony was extended to the sixth of March following; under which some further proofs were taken and returned accordingly.
After which the auditor by his report dated on the 8th and filed on the 9th of March, 1841, says, that in obedience to the order of the 7th of December, 1840, he had examined the proceedings in this cause and arrived at the following conclusions:
The amount of proceeds of sales made by the trustee on the 27th of March, 1839, appears, from the auditor’s report filed on the 8th of May, 1840, to have been $15,637 36; from which deduct the commissions and expenses of the trustee as shewn by the same report $728 47; and costs of suit in this court and the Court of Appeals, $879 17; and additional costs now due $110 57; and there remains the net sum of $13,919 15, to be appropriated according to the principies heretofore established in this cause. The mortgage debt of The Farmers’ Bank of Maryland, with interest to the day of sale, as per the same report, and covering all the property sold amounts to the sum of $13,739 55. And, if the net proceeds of sale are to be applied to its payment, there would remain for distribution amongst the general creditors only the sum of $179 60.
The auditor finds, that all the claims filed against the estate; except that of the complainant, are barred by the statute of limitations, which has been pleaded by all the parties whose interests would be affected by them.
The mortgage of the Farmers’ Bank covers the whole of that part of the estate of the deceased, known as Marengo, which was devised to Fayette Gibson, to Edward Gibson, and to Frances Gibson, now Frances Tilton, wife of James Tilton. Before the institution of these proceedings, Fayette Gibson had sold his portion thereof to Edward Lloyd, one of the defendants, with the consent of the Bank; and it had been held not to be answerable for any part of the mortgage debt. The Court of Appeals have further said, in reference to the position in which the Bank has been placed by their consent to the proceedings of Fayette Gibson, that if it should turn -out, that the residue of that part of Marengo, devised to Fayette Gibson, and by him conveyed to Edward Lloyd or John W. Blake, united with the other parís of Marengo, to which Fayette Gibson was entitled, after paying their just contribution towards the mortgage debt, and all other debts of the deceased, should prove inadequate to the payment of that portion of the mortgage, which the part of Marengo devised to Fayette Gibson was bound to contribute, then in reference to the other devisees, owners of Marengo, the mortgage debt of the Bank must be deemed satisfied and paid to the extent of such inadequacy. Hence it becomes necessary before determining how much of the fund in hand ought to be applied to the payment of the mortgage debt of the Bank, to ascertain what part of it, the land sold to Lloyd would have been made to contribute if now liable. And as Edward Gibson’s devise, which is the part of Marengo alluded to in the opinion of the Court of Appeals, as the part to which Fayette Gibson is now entitled, is answerable for its proper proportion of the general debts, its liability, in this respect also, must be established before making a distribution of the proceeds of sale.
But no part of the estate of the deceased has been sold; except those parts of *511 Marengo which were devised to Edward Gibson and Frances Gibson, now Mrs. Til-ton ; and the only mode of ascertaining the liability of any one share of the estate is to make an apportionment of the outstanding claims against all the devisees who will be eventually answerable therefor, according to the most accurate valuation that can be obtained. For the purpose of affixing a proper valuation upon the several pieces of property devised by the deceased, the auditor has relied on the testimony taken under an order of court of the 14th of September last; and as he is required, for the purpose of giving proper effect to the plea of limitations set up by James Tilton, for his life interest, and Clara Tilton, for her part of the estate as allowed by the court, to make the estimate as of the day of the death of the deceased, he has considered the true intent and meaning of the order of the 7th of December, 1840, to be, that all the property must be valued as of that day, and endeavoured accordingly, so to estimate it. There are three parcels of property, mentioned in the will of the deceased, not embraced by the testimony, viz: a house and lot in Easton, certain land in Alleghany county, and certain land in Tuckahoe. These parcels have therefore been omitted by the auditor in all his calculations; but, if they should be hereafter found by the trustee, they might be sold, and the proceeds distributed amongst the several parties according to their respective rights and interests as they may, by that time, be established. The rest of the estate of the deceased is valued as of the time of his death in the following manner, viz:
First, Edward Gibson’s part of Marengo at $17,062 50; Second, Frances Tilton’s part of the same at $6,189 59; Third, Fayette Gibson’s part of the same at $7,075 00; Fourth, Clara Tilton’s devise at $5,681 00; Fifth, Anne Reynolds, wife of Joseph Reynolds, devise at $9,315 00; Sixth, Fayette Gibson’s devise sold to John W. Blake at $10,500 00 ; Seventh, Harriet Bennett’s devise at $7,840 00. The whole estate valued at $63,663 09.
According to the above estimate the mortgaged property ought to have paid, at the death of the deceased, the mortgage debt in the following proportions, viz: The whole mortgage debt with interest to the day of sale amounts, as per auditor’s report filed the 8th of May, 1840, to $13,739 55. First, Edward Gibson’s part of Marengo would have paid for its proportion $7,730 09; Second, Mrs. Tilton’s part would have paid $2,804 17; and Third, Fayette Gibson’s pait, sold to Lloyd, $3,205 29.
In order to arrive at the proper value of the equity of redemption in these parcels of land the auditor has estimated the interest of Mrs. Rebecca Gibson, the widow of the deceased, and charged it upon that part of Marengo which was devised to Fayette Gibson, it being proved, that for the first few years after the death of her husband, she resided on that place. He finds from the testimony, that her interest is valued at one hundred and fifty dollars per annum; and from the proof, taken on the sixth day of March, 1841, that at the death of the deceased she was forty-nine years of age; which, according to the rule of this court, would entitle her to nine hundred and thirty-seven dollars and fifty cents. This sum has accordingly been deducted from the equity of redemption of that part before apportioning the general debts, as an incumbrance not subject to any of them.
The equity of redemption on Marengo, after satisfying the mortgage debt, and subject to Mrs. Rebecca Gibson’s interest under the will of the deceased, will be as *512 follows, viz : First, Edward Gibson’s part valued at §17,062 50; deduct portion of mortgage debt $7,730 09, leaving $9,332 41; Second, Fayette Gibson’s part sold to Lloyd, valued at $7,075 00; deduct portion of mortgage debt $3,205 29; and Mrs. Gibson’s dower $937 50, leaving §2,932 21; Third, Mrs. Tilton’s part valued at $6,189 59; deduct portion of mortgage debt §2,804 17, leaving $3,385 42.
In order to assess upon Edward and Fayette Gibson’s devise of Marengo a proper proportion of the complainant’s claim, it will now be necessary to apportion that claim amongst the several devisees, assuming, that the mortgaged property is to contribute according to the value of the equity of redemption only as just settled. The complainant’s claim is a note dated 18th October, 1817, payable five months after date, due 21st March, 1818, $2,500 00, deduct dividend of personal estate, $1,994 93; we find his claim as of this date to be $505 07; of which Edward Gibson’s devise ought to have paid $96 22; Fayette Gibson’s devise, sold to Lloyd, $30 23; Mrs. Tilton’s, $34 91; Mrs. Reynold’s, §96 04; Mrs. Bennett’s, $80 83; Fayette Gibson’s, sold to John W. Blake, $103 27; and Clara Tilton’s, §58 58. A proper reduction of the complainant’s claim may now be made on account of the plea of limitations put in by James Tilton and Clara Tilton. The whole claim of complainant properly chargeable on the real estate as above $505 07; deduct Clara Tilton’s portion thereof §58 58; and six-fifteenths for James Tilton’s life interest, $15 96 ; leaves $432 53, due to the complainant.
As the Court of Appeals have said, that the complainant is entitled to substitution in the place of creditors who, to his exclusion, were paid out of the personal estate; except against Bennett’s and Blake’s heirs, it may be seen by the following statement what is the amount as against the latter, as well as all the rest of the devisees.
His claim properly chargeable against the real estate on the 21st of March, deducting loss by the plea of limitations, as above, $432 53. Interest from the 21st March, 1818, to the 27th of March, 1839, §545 42; shewing as the basis of apportionment the sum of $977 95, against Bennett’s and Blake’s heirs. The sum to be apportioned as against the rest will be found by adding dividend of personal estate, $1,994 93, with interest thereon from 21st March, 1818, to the 18th December following, $88 77; amounting to $2,083 70. Then paid by the executors, §600 00; leaving a balance of §1,483 70; interest on which from the 18th December, 1818, to the 27th March, 1S39, §1,804 92, amounting to $3,288 62, which, added to the sum shewn as the basis of apportionment, amounts to §4,266 57. But the complainant’s claim as now recoverable amounts to the sum of $3,446 75; of which Edward Gibson’s'devise would pay $1,266 06; Fayette Gibson’s, sold to Lloyd, §397 79; Mrs. Tilton’s, deducting six-fifteenths for James Tilton’s life interest, $275 42; Mrs. Reynolds’, $1,263 70; and Bennett’s heirs, $243 78. If we add to this amount the loss by not allowing the complainant the benefit of substitution against Bennett’s heirs, his whole claim as shewn; viz: as above, §3,446 75; loss, §819 82, the whole claim will be as above, §4,266 57.
In the above apportionment the auditor has not included the devise to Fayette Gibson which was sold to John W. Blake, because it appears from the testimony, that after the sale of that portion to him, he paid debts of the estate to the amount of $5,855 56; which is larger than the whole of the complainant’s claim, even without allowing interest on the payment to the day of sale, to bring the payment to an equality with it.
Having now ascertained what portion of the general debts are properly chargeable upon Fayette Gibson’s portion of Marengo, sold to Lloyd, as well as upon *513 Edward Gibson’s portion, now owned by Fayette Gibson, it will be seen, that the contingency has happened which was contemplated and provided for by the Court of Appeals. Edward Gibson’s part of Marengo sold for $10,500 00; to pay its portion of costs, $291 23; commissions, §331 55; mortgage debt, $7,730 09 ; McCormick’s claim, §1,266 06; to pay Lloyd’s portion of the mortgage debt, $3,205 29; of costs, $120 77; and of McCormick’s claim, $397 79; amounting altogether to $13,045 80. Loss to the Bank of §3,045 80.
But the auditor finds from the testimony, that Lloyd, after his purchase, paid a large sum for debts due by the estate, amounting to the sum of $3,161 53, with interest from the 6th February, 1822, to the 27th March, 1839, $3,235 83 ; making $6,397 36 — which is greater than the sums assessed upon his portion of the devise and Edward Gibson’s. The auditor has, in apportioning the complainant's debts amongst the devisees, included Lloyd, although he appears to have paid more than his proper proportion; because that is no defence against a creditor. The creditor, it is conceived, has also a right to require this assessment to bo made as against the Bank, because there does not appear to be any reason for allowing the Bank, by its agreement with the owners of any part of the mortgaged property to alter the situation, or change the rights of any other creditor. In respect to the complainant’s claim, therefore, the property has been charged as if the agreement for the sale of Lloyd’s portion had not been assented to by them. Although the auditor has excluded Blake’s heirs, and Lloyd, from contribution towards the payment of the complainant’s claim, the former being already excluded, and the Bank being substituted in the place of the latter, as will be seen hereafter, they have been charged with their proper proportion of costs, inasmuch as the decree went against them in common with the other devisees; and a payment of one creditor is no just defence against the claim of another; unless the assets have been consumed. But in giving the Bank the substitution above mentioned, the other devisees pay only to the extent of the benefit they have received from the payment made by the Bank, so as to leave the Bank to stand in the same situation in which the complainant would have stood, if he were seeking from them the payment of his claim. If then, the Bank seeks from the other devisees payment of the portions of that debt paid by Edward Gibson’s interest, the following will be the result: Loss to the Bank as above, $3,013 50; of which Mrs. Tilton would repay §176 07 ; Mrs. Reynolds, $807 89 ; Bennett’s heirs, §155 86; and Lloyd’s heirs for proportion of costs, $120 77; amounting to $1,260 50; leaving an eventual loss of §1,785 21.
The auditor now proceeds to distribute the funds in the hands of the trustee amongst the several parlies according to the views heretofore presented in his report ; and in doing so will assess upon the property sold, all the commissions and expenses of the sale ; and the other costs upon all the properly; except Mrs. Til-ton’s interest and the devise to Clara Tilton. He will then assign all of Mrs. Til-ton’s interest that may remain, after discharging its appropriate liabilities, to the complainant, in payment of so much of his claim, leaving to her a remedy against the other devisees. He will then proceed to shew in what proportions the devisees ought to pay the balance of the complainant’s debt, and repay Mrs. Tilton. In apportioning the debt of the complainant amongst the devisees, the only motive of the auditor is to shew by what payments the other devisees may avoid a sale; and, if any one should pay the whole, what his equity against the others would be.
Credit for the whole amount of sales as per auditor’s report, filed on the 8th of May, 1840, $15,637 36. Against which debit: Commissions and expenses of trus *514 tee, $728 47; costs in this court and the Court of Appeals, $879 17; additional costs; register’s fees, $23 07; tax, 50 cents; depositions, $45 00; and auditor’s fees, $42 00; making $110 57; amounting altogether for commissions, costs and expenses, to $1,718 21. To the Farmers’ Bank for their mortgage debt, $13,739 55; deduct losses above, $3,045 55; then add, to be repaid by Mrs. Tilton, $176 07; leaving due to the Bank the sum of $10,869 82. To James Tilton, for his life estate in Mrs. Tilton’s equity as sold, three-twelfths, $584 30. To the complainant for his proper proportion of Mrs. Tilton’s equity, $275 42. To ditto, for his proper proportion of Edward Gibson’s devise, $1,266 06. 'To ditto, for proper proportion of Fayette Gibson’s devise, sold to Lloyd, $397 79, and to ditto, for balance of Mrs. Tilton’s equity, $525 76. Being equivalent to the before mentioned whole amount of sales, $15,637 36.
By the aforegoing account the complainant would receive out of the funds in hand on his claim-, the sum of $2,465 03; his whole claim as recoverable amounts to $3,446 75; leaving, still to be provided for, the sum of $981 72; of which Mrs. Reynold’s devise ought to pay $S22 96; and Mrs. Bennett’s, $158 76.
Mrs. Tilton’s devise sold for $5,137 36; deduct proportion of mortgage debt, $2,804 17; proportion of costs,- commissions, ike. $299 57; leaving a balance due her of $1,173 90. Of which she repaid to the Bank, $176 07; leaving to be repaid to her by Reynolds and wife, $440 74; and for costs, $159 01; making $599 75; by Bennett’s heirs, $85 02; and for costs, $133 83, making $218 85; and by Blake’s heirs for costs, $179 23.
The following will shew the situation of the estate after the distribution of the proceeds according to the former account. Debtor — The estate to the Bank, $1,260 59 — to complainant, $981 72 — to Mrs. Tilton, $997 83; making $3,240 14. Credit — Due by Reynolds and wife, $2,230 60; by Bennett’s heirs, $533 47; by Lloyd for costs, $120 77; by Blake’s heirs for costs, $179 23; paid by Mrs. Tilton to the Bank, $176 07; amounting as above to $3,240 14.
If these views be correct the Bank would lose the sum of $1,785 21; but as there would have been no loss if the mortgaged property had been properly applied, the Bank can come upon the estate only as a general creditor for this balance; either in its own right, or by substitution; and it is conceived, that for the amount which is claimed as a general creditor, the plea of limitations, as set up by the devisees, would be sustained; and that the above mentioned balance would be finally lost.
In order, however, to meet the views of the Bank, in case the plea of limitations should not be sustained, the auditor has prepared the following statements to shew what would be the amount of contribution due from each of the devisees liable therefor, if the claim be sustained. This will be done in reference to the plea of limitations set up by Clara and James Tilton, and the right of Mrs. Bennett to have the personal estate first applied; and the distribution would be made as it was for the complainant’s claim as follows: claim of the Bank as a general creditor $1,785 21; Mrs. Tilton would pay $180 28; Mrs. Bennett $113 61; and Reynolds $826 80; making $1,120 61; being a loss on Bennett’s portion of $582 28; on Clara Tilton’s of $82 32; shewing still a loss to the Bank of $664 60.
The auditor has not allowed any of the claims for taxes; because it does not appear that there was an insufficiency of personal property on the premises, or in the county;, without which proof, they cannot be regarded as a lien on the realty. And if such proof were produced, it would still be necessary to shew upon what pieces of property they accrued, in order to charge the proper parties with them.
*515 He further reports, that he designs hereafter to file with this report accounts, drawn off in form, containing what is already included in this report; for the purpose of more convenient reference, so as to enable all the parties interested to see., without reading the report, the result at which it arrives.
Soon after which the auditor reported, that in conformity with his suggestion in his report of the 8th instant, he has prepared and now submits herewith accounts A. B. C. and D. Accounts A. and B. present the views of the auditor as stated in his said report. Account C. shews the liabilities of the several parties to each other, if the Bank is allowed to claim by substitution, or as a general creditor for the amount lost on Edward Gibson’s devise. Account D. has been prepared under the instruction of the solicitor-of the Bank; and awards to that institution payment of its debt in full; leaving a small balance -unappropriated
On the 23d of April, 1841, the plaintiff; the heirs of Bennett, and of Blake, and Mrs. Tilton and James Tilton, excepted to this report of the auditor; and on the day following the Bank filed their exceptions to it. Soon after which the case was submitted without argument.
29th April, 1841. — Bland, Chancellor. — Ordered, that the foregoing accounts, designated as accounts A. and B. as made and reported by the auditor, be and the same are hereby ratified and confirmed ; and the trustee is directed to apply the proceeds accordingly, with a due proportion of interest, that has been or may be received. AH other parts of the said reports of the auditor filed on the 9lh of March last, together with all exceptions to the same, which are in any way at variance with this order, are hereby overruled and rejected.
It is understood that the parties acquiesced in the propriety of this order, and finally adjusted the case among themselves accordingly.
This case has been inserted here as a leading one in relation to the statute of limitations when relied on in a creditor’s suit; and the nature and operation of its principles may be deemed to have been sufficiently illustrated by what is here said, together with what has been stated of it in the other reports of it referred to as above.

 Lacam v. Mertins, 1 Ves. 312; Aguilar v. Aguilar, 5 Mad. 414.

 Powel Mortg. 890; 1 Mad. Cha. Pra. 250, 616; Aldrich v. Cooper, 8 Ves. 388.

 Wright v. Simpson, 6 Ves. 734; Ex parte Kendall, 17 Ves. 520; Everston v. Booth, 19 John. Rep. 486 ; The York & Jersey Steam Boat Ferry Company v. The Associates of the Jersey Company, 1 Hopkins, 460.

 Theobald Prin. & Sur. 256; Hayes v. Ward, 4 John. C. C. 123.

 2 Fonb. Eq. 298.

 Coombs v. Jordon, ante 284.

 1823, ch. 194; Coombs v. Jordan, ante 284.

 Martin v. Martin, 1 Ves. 212; Lowthian v. HaseJ, 4 Bro. C. C. 171; Hammond v. Hammond, 2 Bland, 361.

 Walker v. Preswick, 2 Ves. 622; Ellicott v. Welch, 2 Bland, 247.

 Harrison v. Rumsey, 2 Ves. 488; Welch v, Stewart, 2 Bland, 38.

 Sheppard v. Kent, 2 Vern. 435.

 Pinchon’s case, 9 Co. 88; Dep. Com. Gui. 125.

 Turner v. Turner, 1 Jac. & W. 39.

 1798, ch. 101, sub ch. 8, s. 17.

 1785, ch. 80, s. 7.

 Hammond v. Hammond, 2 Bland, 325.

 1715, ch. 23, s. 2 and 6.

 Benson v. Benson, 1 P. Will. 130; Freemoult v. Dedire, 1 P. Will. 429 ; Gifford v. Manley, Cas. Tem. Tal. 109; Vernon v. Vawdry, 2 Atk. 119; Langley v. Furlong, 1 Dick. 315; Baily v. Ekins, 2 Dick. 632; Cheveley v. Stone, 2 Dick. 782; Broome v. Monek, 10 Ves. 620; Anonymous, 18 Ves. 258; Musson v. May, 3 Ves. &. B. 194; Mavor v. Davenport, 2 Cond. Chan. Rep. 395; Marriott v. Thompson, Willis, 186.

 Jones v. Davids, 3 Cond. Chan. Rep. 665; Copis v. Middleton, 11 Cond. Chan. Rep. 128.

 Howel v. Price, 1 P. Will. 291; King v. King, 3 P. Will. 358; Meynell v. Howard, Prec. Chan. 61; Cope v. Cope, 2 Salk. 449; Galton v. Hancock, 2 Atk. 435; Waring v. Ward, 7 Ves. 336; Aldrick v. Cooper, 5 Ves. 394; Ex parte Digby, 4 Cond. Chan. Rep. 110.

 Hammond v. Hammond, 2 Bland, 384; Greenwood v. Taylor, 4 Cond. Chan. Hep. 381.

 Humphreys v. Humphreys, 3 P. Will. 397; Glynn v. The Bank, 2 Ves. 42; Hillary v. Waller, 12 Ves. 266 ; Fladong v. Winter, 19 Ves. 199; Serle v. Barrington, 2 Ld. Raym. 1370; The Mayor of Hull v. Horner, Cowp. 108.

i) Dorsey v. Hammond, 1 Bland, 464; Townshend v. Duncan, 2 Bland, 45.

 Welch v. Stewart, 2 Bland, 41.

 1796, ch. 67,3. 13 and 29; 1824, th. 100; Keane v. Boycott, 2 H. Blac. 511, note.